**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40428**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2013 Opinion No. 11** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: February 11, 2014** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| MORGAN CHRISTOPHER ALLEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Judgment of conviction for manufacturing and delivery of a controlled substance and possession of paraphernalia with intent to deliver, enhanced for being a repeat offender of the controlled substances laws, <u>affirmed</u>.

Pitcher & Holdaway, PLLC, Logan, Utah, for appellant. Ryan L. Holdaway argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.
_____

MELANSON, Judge

Morgan Christopher Alley appeals from his judgment of conviction for manufacturing and delivery of a controlled substance and possession of paraphernalia with intent to deliver, enhanced for being a repeat offender of the controlled substances laws. Alley challenges the district court's orders denying his motion to dismiss one of his charges and motion to reconsider. He specifically alleges that the district court erred in determining that one of the active ingredients in the product he produced was a controlled substance and that the controlled substances statute was not unconstitutionally vague as applied to his case. For the reasons set forth below, we affirm, albeit on different grounds than those expressed by the district court.

1

# I.

## FACTS AND PROCEDURE

In September 2011, Alley owned and operated a small "head shop" that sold drug paraphernalia and a product he had created called Twizted Potpourri. Although this product (commonly referred to as "spice") was marketed as incense or potpourri, it was sold to undercover police officers as if it were intended to be smoked. Samples of this product were collected through controlled buys, through trash picks, and as the result of a search warrant executed at the shop. Testing of these samples indicated the presence of three different chemicals: JWH-019, JWH-210, and AM-2201. The state determined that all three were schedule I controlled substances under the version of I.C. § 37-2705(d)(30)(ii)(a) then in effect.[1] Alley was subsequently charged with, among other things, one count of conspiracy to manufacture, deliver, or possess a controlled substance with intent to deliver. I.C. §§ 37-2732(a), (f), and 18-1701. Alley filed a motion to dismiss the indictment, arguing that one of the chemical compounds he was using to make his product, AM-2201, was not a controlled substance under Idaho law at the time. He also argued that the statute was unconstitutionally vague as applied to him. The district court denied the motion, holding that the legislature intended to ban all chemicals used in spice that mimic the effects of marijuana, including AM-2201, and that the statute was clear in providing fair notice of that to persons of ordinary intelligence. Alley filed a motion for reconsideration, which the district court also denied.

Alley conditionally pled guilty to manufacturing and delivery of a controlled substance, I.C. § 37-2732(a), and possession of paraphernalia with intent to deliver, I.C. § 37-2734B, with an enhancement for being a repeat offender of the controlled substance laws, I.C. § 37-2739(a). As part of a plea agreement, he preserved his right to appeal the district court's denial of his

---

[1] The version of I.C. § 37-2705(d)(30)(ii)(a) in effect when Alley was charged was recently amended. *See* 2012 Idaho Sess. Laws, ch. 181. The statute is now found at I.C. § 37-2705(d)(31)(ii) and the disputed language "by alkyl, alkenyl, cycloalkylmethyl, cycloalkylethyl or 2-(4-morpholinyl)ethyl" and similar language in subsections (ii)(a)-(f) has been replaced with "to any extent." Alley concedes that the new statutory language includes AM-2201 as a schedule I controlled substance.

motion to dismiss and motion to reconsider.[2]  The district court sentenced Alley to concurrent unified terms of ten years, with minimum periods of confinement of two years.  Alley appeals.

## II.

## ANALYSIS

### A.  Mootness

The state raises the question of mootness as a preliminary issue.  This Court may dismiss an appeal when it appears that the case involves only a moot question.  A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  In other words, a case is moot if it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome.  *State v. Manzanares*, 152 Idaho 410, 419, 272 P.3d 382, 391 (2012); *State v. Long*, 153 Idaho 168, 170, 280 P.3d 195, 197 (Ct. App. 2012).  Even where a question is moot, there are three exceptions to the mootness doctrine: (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010); *State v. Hoyle*, 140 Idaho 679, 682, 99 P.3d 1069, 1072 (2004).

The state argues that the issue of whether AM-2201 is a schedule I controlled substance is moot because, by pleading guilty, Alley admitted to manufacturing and delivering substances containing JWH-019 and JWH-210, both of which he admits were controlled substances within the scope of former I.C. § 37-2705(d)(30).  Thus, the state argues that this appeal is moot because Alley admitted that he violated the statute irrespective of any determination that AM-2201 is or is not a controlled substance.  Alley responds that the issue is not moot because he was

---

[2]    Alley's guilty plea was conditioned on his ability to appeal the district court's adverse rulings on his motion to dismiss and motion to reconsider.  Idaho Criminal Rule 11(a) provides:

> (2)    Conditional Pleas. With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty reserving in writing the right, on appeal from the judgment, to review any specified adverse ruling. *If the defendant prevails on appeal*, the defendant shall be allowed to withdraw defendant's plea.

(Emphasis added.)

charged with possessing all three chemicals in a single count. He argues that, if this Court holds that AM-2201 was not a schedule I controlled substance under the statute in effect in 2011, he would be able to withdraw his guilty plea and proceed to trial with a mistake of fact defense--specifically, that he intended only to possess AM-2201 and believed that was all he possessed, negating the mens rea required for possession of JWH-019 and JWH-210. As a result, although not explicit, Alley argues that the first exception to the mootness doctrine should apply because the determination of whether AM-2201 is a schedule I controlled substance will have a collateral legal consequence for him by eliminating a potential defense he could raise at trial. We agree. Although a holding by this Court that AM-2201 is not a controlled substance would not resolve Alley's legal issues, it would provide him with a potential defense and a decision to the contrary would definitively eliminate that possibility. Thus, there remain collateral legal consequences dependent on a decision in this case. As a result, we hold that the issue presented in this case is not moot and will consider the substantive basis for this appeal.

**B.      Scope of Controlled Substance Statute**

Alley argues that his motion to dismiss should have been granted because AM-2201 was not a controlled substance under the version of I.C. § 37-2705(d)(30)(ii)(a) that was in effect at the time. He raises several points of error, all of which focus around the district court's interpretation of former I.C. § 37-2705(d)(30)(ii)(a).

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the statutory language is plain and unambiguous, this Court will give effect to the clearly expressed intent of the legislative body without engaging in statutory construction. *State v. Doe*, 140 Idaho 271, 274, 92 P.3d 521, 524 (2004); *State v. Palmer*, 138 Idaho 931, 940, 71 P.3d 1078, 1087 (Ct. App. 2003). The language of the statute is to be given its plain, obvious, and rational meaning. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999). If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain the intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind

the statute, and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation that will not render it a nullity. *Id.* A court must also give effect to all the words and provisions of the statute if possible, so that none will be void, superfluous, or redundant. *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007). Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *Doe*, 140 Idaho at 275, 92 P.3d at 525.

Additionally, if a criminal statute is ambiguous, the rule of lenity applies and the statute must be construed in favor of the accused. *State v. Dewey*, 131 Idaho 846, 848, 965 P.2d 206, 208 (Ct. App. 1998); *State v. Martinez*, 126 Idaho 801, 803, 891 P.2d 1061, 1063 (Ct. App. 1995). However, where a review of the legislative history makes the meaning of the statute clear, the rule of lenity will not be applied. *State v. Bradshaw*, 155 Idaho 437, 440, 313 P.3d 765, 768 (Ct. App. 2013); *State v. Jones*, 151 Idaho 943, 947, 265 P.3d 1155, 1159 (Ct. App. 2011). The rule of lenity applies only when grievous ambiguity or uncertainty in a criminal statute that is not resolved by looking at the text, context, legislative history, or underlying policy of the statute allows for multiple reasonable constructions. *Bradshaw*, 155 Idaho at 441, 313 P.3d at 769.

The district court here made no determination that the statute was ambiguous. Instead, it framed its analysis in terms of determining the legislative intent. The district court twice referenced the legislative history and the committee minutes from the legislative hearings in terms of providing insight into the legislative intent. The district court also quoted the full legislative statement of purpose, which is not a part of the enacted statutory language and is, instead, legislative history. Although the district court's decision does not make clear how much of a role this extrinsic evidence of the legislative intent played in its analysis, it was error for the district court to consider it without first determining whether the statute was ambiguous. Unless a statute is ambiguous, a court is limited to looking to the plain language of the statute to determine the legislative intent that is clearly expressed through that language. *Doe*, 140 Idaho at 274, 92 P.3d at 524; *Palmer*, 138 Idaho at 940, 71 P.3d at 1087.

We therefore must analyze the language of the statute to determine whether there is a clearly expressed legislative intent or whether it is ambiguous. Alley was charged with a violation of former I.C. § 37-2705(d), which then defined schedule I controlled substances to include chemicals falling within the following categories:

(30) Tetrahydrocannabinols or synthetic equivalents of the substances contained in the plant, or in the resinous extractives of Cannabis, sp. and/or synthetic substances, derivatives, and their isomers with similar chemical structure such as the following:

    i. Tetrahydrocannabinols:

    . . . .

    ii. The following synthetic drugs:

        a. Any compound structurally derived from 3-(1-naphthoyl)indole . . . *by substitution* at the nitrogen atom of the indole ring *by alkyl, alkenyl, cycloalkylmethyl, cycloalkylethyl or 2-(4-morpholinyl)ethyl*, whether or not further substituted in the indole ring to any extent, whether or not substituted in the naphthyl ring to any extent.

(Emphasis added.) The italicized language above is the crux of the controversy in this case, particularly the phrase "by substitution . . . by alkyl."

### 1. Meaning of the term "alkyl"

In the proceedings in the district court, the parties' dispute focused primarily upon whether AM-2201 falls within an enumerated example found in former I.C. § 37-2705(d)(30)(ii)(a). The state and Alley agree that AM-2201 is a compound structurally derived from 3-(1-naphthoyl)indole by substitution at the nitrogen atom of the indole ring, but they presented divergent evidence concerning the meaning of the word "alkyl" and whether AM-2201 is derived by a substitution by an alkyl.

To address this issue, both parties presented expert testimony at a hearing on Alley's motion to dismiss. According to that testimony, the term "alkyl" includes, at a minimum, a "straight chain or a branched saturated chain hydrocarbon." In this sense, "alkyl" refers to a functional group that is composed solely of hydrogen and carbon atoms, has no double or triple bonds, and does not form a ring shape. The relevant functional group in AM-2201 is fluoropentyl. This functional group has no double bonds and does not form a ring shape. However, fluoropentyl is not a "hydrocarbon" because it contains a single fluorine atom. Because of the fluorine atom, the parties agree that fluoropentyl is an alkyl halide, which is also commonly referred to as a haloalykl. A halide refers to the presence of a halogen and halogens are a category of elements that include fluorine. The parties dispute whether the term "alkyl" as used in former I.C. § 37-2705(d)(30)(ii)(a) can be read more broadly to include "alkyl halides," and both Alley and the state introduced expert testimony in that regard.

6

David Sincerbeaux, who holds a bachelor's degree in chemistry and has sixteen years of experience as a chemist with the Idaho State Police forensic laboratory, testified for the state. He testified that he had worked with the Idaho Board of Pharmacy and Office of Drug Policy to draft the legislation at issue. He and the other drafters copied the language of former I.C. § 37-2705(d)(30)(ii)(a) from a statute in effect in the United Kingdom. That statute described different classes of chemicals categorized by their chemical structure. Before the statute passed, Sincerbeaux consulted colleagues, reviewed textbooks, and checked the definition standards of the International Union of Pure and Applied Chemistry (IUPAC). After this review, he considered drafting more specific language in order to make the statute "more clear," but he did not share these thoughts with the legislature. Instead, he considered the language used in the foreign statute to be sufficiently broad because, in his view, the term "alkyl" includes alkyl halides with regard to naming the component structures. He believed that describing the "backbone structure" of a functional group was sufficient to describe the group or class a chemical fell within. This was based on his review of several textbooks and the IUPAC standards, which state that naming organic compounds starts with naming the parent structure, which is then modified to indicate the precise structural change required to generate the compound from the parent structure. While he conceded that fluoropentyl would have distinct chemical properties, he argued its "backbone structure" is pentyl, an alkyl. Accordingly, it was his opinion that AM-2201 is a chemical that falls within the examples enumerated in I.C. § 37-2705(d)(30)(ii)(a).

Dr. Owen McDougal, an associate professor of chemistry at Boise State University, testified for the defense that the term "alkyl" excluded alkyl halides. He said that the term "alkyl" refers exclusively to a straight chain hydrocarbon with no double or triple bonds. He said this was consistent with the standardized IUPAC definitions. Because the term "alkyl" excludes alkyl halides, according to Dr. McDougal, AM-2201 would not fall within the enumerated examples in I.C. § 37-2705(d)(30)(ii)(a).

Dr. Karl De Jesus, a professor of organic chemistry at Idaho State University, also testified for the defense. He agreed with Dr. McDougal that the definition of alkyl was precise and narrow and did not include alkyl halides. When presented with Sincerbeaux's affidavit stating that "any chemist with a basic understanding" of the texts cited in his affidavit would understand that AM-2201 is a schedule I controlled substance because it contains an alkyl group,

7

Dr. De Jesus disagreed.  In his opinion, there is only one correct definition of the term "alkyl," the IUPAC standard, and Sincerbeaux's definition was inconsistent with that definition.  Dr. De Jesus also opined that Sincerbeaux's view is not held by experts in the field.

Accordingly, the district court was presented with conflicting expert testimony on the meaning of the technical term "alkyl."  Where the legislature uses a term of art, and there is no indication of contrary intent, we presume the legislature intended the word to have its established meaning.  *See Morissette v. United States*, 342 U.S. 246, 263 (1952); *see also State v. Schulz*, 151 Idaho 863, 867, 264 P.3d 970, 974 (2011) (applying this rule to legal terms of art).  The district court did not make any factual finding on the established meaning of "alkyl" or on which expert testimony it found more credible.  Indeed, there has been no definitive evidence presented as to any established meaning of "alkyl."  Both the state and defense experts provided reasonable interpretations of what the plain meaning of "alkyl" could be in isolation.  Because there are multiple reasonable interpretations of the plain language of the statute, we hold that the term "alkyl" in I.C. § 37-2705(d)(30)(ii)(a) is ambiguous in this context.

Because the term "alkyl" is ambiguous, we must resort to statutory construction and look to the surrounding text, context, and history of the term to try to clarify its meaning.  However, the legislative history of the statute provides little insight into what the legislature intended for alkyl to mean.  The Idaho Legislature amended I.C. § 37-2705(d)(30) in 2011 by adding subsection (ii), which covered "synthetic drugs" and included the term "alkyl."  *See* 2011 Idaho Sess. Laws, ch. 47.  The stated purpose for the legislation provided the following:

> The purpose of the legislation is to create safe regulations for the public concerning Tetrahydrocannibinols from synthetic drugs (Spice) that mimic the effects of Cannabis and identifying additional substances to be classified in schedule 1.  This legislation continues what is currently being enforced by the Board of Pharmacy.  Declaring an emergency.

Statement of Purpose, HB 139 (2011).  This statement gives a generalized motivation behind the statute shared by at least some of the legislators who passed the bill, but it provides no insight into the intended meaning of the term "alkyl."  Moreover, the statement of purpose is not an official part of the final bill voted on by the entire legislature and enacted into law.  *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 892, 265 P.3d 502, 505 (2011).  Indeed, the statement of purpose represents the purpose of the bill's sponsors and cosponsors in creating the bill, not the legislature's purpose in passing it.  In contrast, the preface to the bill passed by the legislature provided:  "An act relating to uniform controlled substances; amending Section

37-2705, Idaho Code, to identify additional substances to be classified in schedule I; and declaring an emergency." 2011 Idaho Sess. Laws, ch. 47. This statement, though more persuasive as an enacted part of the bill, is even more general in its statement of legislative intent, providing no insight into the intended meaning of the term "alkyl."

The house and senate committee minutes pertaining to the statute are equally unhelpful.[3] In those minutes, a representative from the Idaho Office of Drug Policy discussed the purpose of the bill, stating that the legislation specifically targeted the "backbone structure" of the chemicals used to produce spice variations. Although this is consistent with the interpretation forwarded by the state and the testimony of the state's expert, it does not necessarily follow that this was the interpretation adopted by the legislature when it passed the bill. And even if we could assume that the legislature implicitly adopted this interpretation due to its passage of the bill, the statement was not specific to the meaning of the term "alkyl" and could have referred to other chemical compounds in the statute, such as the 3-(1-naphthoyl)indole parent structure in I.C. § 37-2705(d)(30)(ii)(a), which the state's expert also referred to as a "backbone structure." In either case, the committee minutes, like the legislative history overall, is not persuasive support for either Alley's or the state's position.

Turning to the surrounding text and context in which the term was used, we find some guidance, as this section of I.C. § 37-2705 was not the only one to use "alkyl." Another component of I.C. § 37-2705 in which "alkyl" was used indicates that the legislature did not intend for the term "alkyl" to include "alkyl halide." Subsection (f)(3)(i), in defining "substituted cathinones," refers to "substitution in the ring system to any extent with alkyl . . . [or] haloalkyl." Thus, the same statute that refers to "alkyl" in subsection (d)(3)(ii)(a) also distinguishes between alkyls and alkyl halides in subsection (f)(3)(i). Otherwise, the use of "haloalkyl" in the latter subsection following "alkyl" would be surplusage. We therefore conclude that the text of I.C. § 37-2705, when read as a whole, supports the defense experts' interpretation of the word "alkyl."

---

[3] We note that legislative committee minutes are arguably inapposite when discussing legislative history, as they represent only the statements of interested parties to a small portion of the legislature. We discuss them here to illustrate their inability to provide helpful insight into the legislative intent.

9

Idaho case law holds that if the context of an ambiguous statute or legislative history does not make its meaning clear, the rule of lenity requires that it be construed in favor of the accused. *Jones*, 151 Idaho at 947, 265 P.3d at 1159; *Dewey*, 131 Idaho at 848, 965 P.2d at 208; *Martinez*, 126 Idaho at 803, 891 P.2d at 1063. Here, nothing in the legislative history aids in the interpretation of "alkyl," but there is a textual basis supporting the meaning attributed to "alkyl" by the defense experts. However, no absurdity would result if either reading were imposed.

On this record, we conclude that the term "alkyl," as used in I.C. § 37-2705(d)(30)(ii)(a), does not unambiguously include alkyl halides. The term may be susceptible to two meanings, but the text of another relevant portion of the statute tends to support the meaning ascribed by the defense. If the defense experts' testimony and this textual support do not entirely resolve the meaning in favor of the defense, they establish that the meaning of "alkyl" is at least ambiguous. Because this ambiguity is not resolved by the surrounding text, context, or legislative history of the statute, the rule of lenity applies. Accordingly, we interpret the term "alkyl" narrowly to refer only to alkyl groups, excluding alkyl halides. It follows that AM-2201 is not included in the enumerated examples listed in I.C. § 37-2705(d)(30)(ii)(a).

### 2.      Other portions of I.C. § 37-2705(d)(30)

Having concluded that AM-2201 is not one of the chemical compounds expressly enumerated in I.C. § 37-2705(d)(30)(ii), we must consider whether it may be encompassed within another portion of subsection (d)(30). The latter portion of subsection (d)(30) covers "synthetic substances, derivatives, and their isomers with similar chemical structure such as the following," after which nonexclusive lists of example substances are provided in subparts (i) and (ii). The phrase "with similar chemical structure" raises the question of "similar to what?" Alley argues that it refers to substances having a chemical structure similar to tetrahydrocannabinols (THC), with the list that follows providing relevant examples. On an initial, casual reading, normal English syntax might appear to support Alley's contention; it would seem that "similar" refers to antecedents in the same sentence, that is, THC or synthetic equivalents of substances contained in the marijuana plant. On closer examination, however, it is apparent that this cannot be the intended meaning. First, the listed chemicals under subpart (i) are themselves forms of THC. It would be nonsensical to interpret the statute as referring to "THC and synthetic substances with similar chemical structure to THC such as THC." Second, it appears to be undisputed that the other synthetic drugs listed in subpart (ii) as being illustrative of substances

10

"with similar chemical structures" are not, in fact, similar in chemical structure to THC.[4] Therefore, the phrase "with similar chemical structure" must not refer to substances with chemical structures similar to THC. The alternative interpretation of the statute, which yields a sensible result and does not render subpart (i) surplusage, is that the phrase refers to substances with chemical structures similar to those substances listed in subparts (i) and (ii).

Alley argues that the rule of lenity should again apply, requiring that the statute be strictly construed in his favor. However, the rule of lenity applies only to ambiguous statutes. As we have explained, any initial ambiguity in the sentence is resolved when the entire subsection is read together and all subparts are given meaningful effect. When interpreting a statute, the statute is to be construed as a whole without separating one provision from another. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. Although this rule is generally applied in terms of interpreting an ambiguous statute, the logic behind it applies with equal force to situations where a statute is not ambiguous. Indeed, the plain, obvious, and rationale meaning of a statutory provision cannot be properly determined from its literal words by focusing on a tiny fraction of language while ignoring the remainder of the statute. *See id.* When taken as a whole, the statutory language here is unambiguous and clear, covering substances with chemical structures similar to one or more of those identified in the nonexclusive list. Moreover, the mere existence of some statutory ambiguity or the possibility of articulating a narrower construction is not sufficient to warrant application of the rule of lenity, as most statutes are, to some degree, ambiguous or susceptible to a narrower reading. *Bradshaw*, 155 Idaho at 440, 313 P.3d at 768. *See also Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Smith v. United States*, 508 U.S. 223, 239 (1993). It follows that AM-2201 is prohibited by I.C. § 37-2705(d) if it has a chemical structure similar to one of the chemicals listed thereunder.

### 3. Motion to dismiss

Additionally, the question of whether AM-2201 has a chemical structure similar to one of the examples listed under I.C. § 37-2705(d)(30)(ii)(a) is a factual question that cannot be

---

[4]    The two defense experts testified that the subpart (ii) substances are not chemically similar to THC, and the state has never disputed that proposition in the trial court or on appeal. The state has never taken the position, in the proceedings below or on appeal, that the "similar chemical structure" language in subsection (d)(30) refers to chemical structures similar to THC. To the contrary, the state has argued below and on appeal that "similar chemical structure" encompasses substances with chemical structure similar to those listed in subsection (d)(30)(ii).

11

resolved in a pretrial motion to dismiss. During the hearing on the motion to dismiss, Alley stated that his motion was proceeding under I.C.R. 48(a)(2). Rule 48(a)(2) allows a court, after giving notice, to dismiss a criminal action on the motion of a party or sua sponte for any reason if the court concludes that the dismissal will "serve the ends of justice and the effective administration of the court's business." However, the Idaho Criminal Rules do not have a provision comparable to a motion for summary judgment found in the Idaho Rules of Civil Procedure. *State v. Stewart*, 149 Idaho 383, 388, 234 P.3d 707, 712 (2010). A defendant may not have a case dismissed before trial based on discovery responses indicating that the state cannot prove the crime charged. *Id.* Similarly, the defendant cannot prevail on a pretrial motion to dismiss when the issue deals with an ultimate fact to be proven at trial, thereby creating a form of summary judgment not provided for under the Criminal Rules. *See* I.C.R. 12(b) ("Any defense objection or request which is capable of determination *without trial of the general issue* may be raised before the trial by motion." (Emphasis added.)). *See also United States v. Covington*, 395 U.S. 57, 60 (1969) (discussing the equivalent federal rule and stating that a fact is capable of determination without a trial of the general issue when a trial of the facts surrounding the commission of the alleged offense would be of no assistance); *United States v. Pope*, 613 F.3d 1255, 1258-61 (10th Cir. 2010) (applying *Covington* and the analogous federal rule). The only somewhat comparable motion would be a motion to dismiss on the ground that the evidence at the preliminary hearing did not show probable cause to believe that the defendant had committed the felony charged. *See, e.g.*, *State v. O'Mealey*, 95 Idaho 202, 506 P.2d 99 (1973). Of course, that motion would require that there be a preliminary hearing, which is not appropriate when a defendant is charged by grand jury indictment, as in this case. *See* I.C.R. 5.1(a). Thus, Alley's motion to dismiss was improper insofar as it acted as a form of pretrial summary judgment on factual matters that should be determined at trial.

A majority of the federal courts that have addressed the issue have also agreed that determining structural similarity of chemicals, as used in a corresponding federal statute,[5] is a question for the finder of fact. *See, e.g.*, *United States v. Bamberg*, 478 F.3d 934, 939-41 (8th Cir. 2007) (where the jury decided whether the chemical at issue was an analogue); *United States v. Brown*, 415 F.3d 1257, 1264 (11th Cir. 2005) (noting that the district court, acting in its role as

---

[5]     *See* 21 U.S.C. § 802(32)(A).

factfinder in a bench trial, had concluded that the government had proven beyond a reasonable doubt that the chemical structure of an analogue was substantially similar to that of an enumerated controlled substance); *United States v. Turcotte*, 405 F.3d 515, 526-27 (7th Cir. 2005) (stating that a substance's legal status as a controlled substance analogue is not a fact that a defendant can know conclusively *ex ante*; it is a fact that the jury must find at trial); *United States v. Roberts*, 363 F.3d 118, 123, n.1 (2d Cir. 2004) (stating that the defendant could not be convicted "unless" or "until" a jury concluded beyond a reasonable doubt that the purported analogue was similar in chemical structure to the listed controlled substances); *United States v. Ansaldi*, 372 F.3d 118, 124 n.2 (2d Cir. 2004) (noting with approval that the jury was intended by Congress to determine whether something is substantially similar).

Whether AM-2201 has a similar chemical structure to one of the example substances listed under the statute is a question of fact. The trial court may determine the meaning of the statute, including the scope of the term "alkyl" and whether the statute is unconstitutionally vague. However, it may not determine the ultimate factual question of whether AM-2201 has a chemical structure similar to one of the examples listed under I.C. § 37-2705(d)(30) by way of a motion to dismiss. This is a jury question bearing on the general issue of Alley's guilt or innocence that cannot be disposed of in a pretrial motion. As a result, we do not determine whether AM-2201 has a chemical structure similar to one of the examples listed under I.C. § 37-2705(d)(30), as this is not a question of law that could be appropriately resolved in a pretrial motion to dismiss. Thus, although the district court did not address whether AM-2201 has a chemical structure similar to one of the examples listed under I.C. § 37-2705(d)(30) in the motion to dismiss, the district court did not err in denying Alley's motion to dismiss because it was procedurally improper.

## C.      Vagueness

Alley next argues that the district court's interpretation of I.C. § 37-2705(d)(30)(ii)(a) renders it unconstitutionally vague as applied to him. He alleges that the statute does not provide fair notice that AM-2201 is a schedule I controlled substance in language that persons of ordinary intelligence can understand.

Where the constitutionality of a statute is challenged, we review the lower court's decision de novo. *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998); *State v. Martin*, 148 Idaho 31, 34, 218 P.3d 10, 13 (Ct. App. 2009). The party attacking a statute on

constitutional grounds bears the burden of proof and must overcome a strong presumption of validity. *State v. Korsen*, 138 Idaho 706, 711, 69 P.3d 126, 131 (2003); *State v. Cook*, 146 Idaho 261, 262, 192 P.3d 1085, 1086 (Ct. App. 2008). Appellate courts are obligated to seek an interpretation of a statute that upholds its constitutionality. *Korsen*, 138 Idaho at 711, 69 P.3d at 131; *Martin*, 148 Idaho at 34, 218 P.3d at 13.

Due process requires that all be informed as to what the state commands or forbids and that persons of ordinary intelligence not be forced to guess at the meaning of the law. *Cobb*, 132 Idaho at 197, 969 P.2d at 246. No one may be required at the peril of loss of liberty to speculate as to the meaning of penal statutes. *Korsen*, 138 Idaho at 711, 69 P.3d at 131. A void for vagueness challenge is more favorably acknowledged and a more stringent vagueness test will be applied where a statute imposes a criminal penalty. *Cobb*, 132 Idaho at 198, 969 P.2d at 247. As a result, criminal statutes must plainly and unmistakably provide fair notice of what is prohibited and what is allowed in language persons of ordinary intelligence will understand. *State v. Kavajecz*, 139 Idaho 482, 486, 80 P.3d 1083, 1087 (2003).

A statute may be challenged as unconstitutionally vague on its face or as applied to a defendant's conduct. *Korsen*, 138 Idaho at 712, 69 P.3d at 132; *Martin*, 148 Idaho at 35, 218 P.3d at 14. Here, Alley does not make a facial challenge, but contends only that the statute is impermissibly vague as applied to him. To succeed on an as-applied vagueness challenge, a complainant must show that the statute failed to provide fair notice that the complainant's conduct was prohibited or failed to provide sufficient guidelines such that police had unbridled discretion in determining whether to charge the complainant. *Korsen*, 138 Idaho at 712, 69 P.3d at 132; *Martin*, 148 Idaho at 35, 218 P.3d at 14.

Alley alleges only that the statute failed to provide fair notice that the chemical composition of AM-2201 was prohibited. Alley argues that under his interpretation of the statute--covering substances structurally similar to THC--it is unconstitutionally vague if applied to any substance not explicitly listed because none of the substances listed are, in fact, structurally similar to THC. However, we have held that Alley's interpretation of the statute is incorrect, so contentions of vagueness stemming from his incorrect reading of the statute do not apply. It has long been held that a statute should not be held void for uncertainty if any practical interpretation can be given the statute. *State v. Larsen*, 135 Idaho 754, 756, 24 P.3d 702, 704 (2001). With a correct reading of the whole statute the phrase "with similar chemical structure"

14

refers not to THC, but to the proceeding nonexclusive list of substances, resolving Alley's allegations of vagueness in this regard.

Alley further contends that the statute is vague because its technical language is unintelligible by persons of ordinary intelligence. However, the use of scientific or technical terms of art in a regulated field does not make a statute unconstitutional. *See Omaechevarria v. Idaho*, 246 U.S. 343, 348 (1918) (stating that people familiar with the subject matter of the statute and desiring to observe the law would have little difficulty in determining what it prohibited). Alley also argues that the statute is vague because the experts in organic chemistry that he retained concluded that AM-2201 was not covered under the statute, while the state's expert concluded that it was. This disagreement, he asserts, indicates that if even those educated in the area of science applicable to the statute could not agree that AM-2201 was covered, persons of ordinary intelligence certainly would not be able to do so. However, disagreement of experts is insufficient alone to establish vagueness. Jurors frequently are called upon to make factual findings on issues as to which expert witnesses disagree.

Additionally, the phrase "with similar chemical structure" does not render the statute fatally vague. Federal courts have consistently held that a similar phrase used in a corresponding federal law, 21 U.S.C. § 802, does not make the statute void for vagueness. Under that statute, to prove that a chemical is a prohibited controlled substance analogue, the government must show that the chemical structure of the purported analogue is "substantially similar to the chemical structure of a controlled substance in schedule I or II." 21 U.S.C § 802(32)(A)(1). There is broad agreement in the federal circuit courts that the statute is not unconstitutionally vague. *See, e.g.*, *Turcotte*, 405 F.3d at 533; *Ansaldi*, 372 F.3d at 124; *United States v. Klecker*, 348 F.3d 69, 72 (4th Cir. 2003); *United States v. Orchard*, 332 F.3d 1133, 1138 (8th Cir. 2003); *United States v. Fisher*, 289 F.3d 1329, 1334 (11th Cir. 2002); *United States v. Granberry*, 916 F.2d 1008, 1010 (5th Cir. 1990). We agree with these federal authorities that a reference to similarity in a statute does not make it unconstitutionally vague, especially when considered in the context of the whole statute.

When read as a whole, I.C. § 37-2705(d)(30) provides fair notice of the conduct that it prohibits. Even if it is conceded that the language used to construct the statute and the nonexclusive list was highly technical and less than perfectly precise in its application to any imaginable substance, a statute need not provide absolute precision in describing the exact

15

conduct that it covers; only fair notice understandable by persons of ordinary intelligence is required. That is what the statute provided here. As a result, we hold that I.C. § 37-2705(d)(30) is not unconstitutionally vague as applied to Alley's conduct, as the correct reading of the statute provides fair notice of the conduct it prohibits.

## III.

## CONCLUSION

This case is not moot because determining whether AM-2201 is a controlled substance will have the collateral legal effect of either providing Alley with or depriving him of potential defenses. When read as a whole, I.C. § 37-2705(d)(30)(ii)(a) is ambiguous as to the meaning of the word "alkyl," and the surrounding text, context, and legislative history of the statute do not eliminate the ambiguity. Resolving this ambiguity in Alley's favor, as required by the rule of lenity, necessitates a conclusion that AM-2201 is not an expressly listed controlled substance under subsection (d)(30)(ii)(a). It may, however, be found to be a controlled substance under that portion of the statute banning possession of synthetic substances with a chemical structure similar to those listed in subsection (d)(30)(ii). Because that is a question of fact bearing on the general issue of Alley's guilt or innocence, it is a question for the jury and cannot be appropriately resolved in a pretrial motion to dismiss. Finally, the latter portion of subsection (d)(30) is not fatally ambiguous or vague as applied to Alley's case. Thus, the district court did not err in denying Alley's motion to dismiss and motion to reconsider. Accordingly, we affirm Alley's judgment of conviction for manufacturing and delivery of a controlled substance and possession of paraphernalia with intent to deliver, enhanced for being a repeat offender of the controlled substances laws.

Chief Judge GUTIERREZ and Judge LANSING, **CONCUR.**

16