**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40550**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2014 Unpublished Opinion No. 810** |
| | ) | |
| Plaintiff-Appellant, | ) | **Filed: November 10, 2014** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **CADEE JO PETERSON,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Respondent. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Order granting new trial, <u>reversed</u>.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for appellant.

Sara B. Thomas, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for respondent.

_____

LANSING, Judge

Cadee Jo Peterson was convicted of conspiracy to manufacture, deliver, or possess with intent to deliver a controlled substance. After a jury trial, the district court granted Peterson's motion for a new trial, holding that it had erred by giving an improper jury instruction regarding mistakes of law. The State appeals and argues that the jury instruction given by the district court was proper.

**I.**

**BACKGROUND**

Peterson was involved in the "spice" distribution enterprise discussed by this Court in *State v. Alley*, 155 Idaho 972, 318 P.3d 962 (Ct. App. 2014) and by the Idaho Supreme Court in *State v. Goggin*, 157 Idaho 1, 333 P.3d 112 (2014) and *State v. Taylor*, ___ Idaho ___, 335 P.3d

1

31 (2014). Indeed, Peterson's case was consolidated with Taylor and Goggin's cases in the district court. The basic facts were summarized in *Goggin*:

> In September 2011, in response to a tip regarding suspicious activity, the Boise Police Department began investigating a warehouse in Boise leased by a man named Morgan Alley. The police conducted surveillance of the warehouse, observing who came and went, and seized trash discarded outside the warehouse on multiple occasions. Upon obtaining a warrant, Detective Joseph Andreoli searched the warehouse and found synthetic cannabinoids and the materials necessary to manufacture products containing synthetic cannabinoids. Andreoli testified that the warehouse contained "all of the items necessary" to manufacture synthetic marijuana, "including chemical; plant material; acetone, which is used as a solvent; and tobacco flavoring." The warehouse also contained "the packaging materials, such as the small plastic containers, lids, and sticker labels" necessary to package a finished synthetic marijuana product. In fact, the warehouse was set up in an assembly line fashion and contained synthetic marijuana in various stages of completion. The warehouse also contained finished synthetic marijuana products in small plastic containers labeled with stickers reading "Twizted Potpourri."
>
> During the course of the investigation, the police expanded their surveillance to include the Red Eye Hut (the Red Eye), a Boise store owned by the limited liability company for which Morgan Alley was the registered agent. Detective Andreoli stated that the Red Eye "appeared to be a head shop" due to the nature "of the items for sale inside." The shop contained various types of pipes, concealment containers, grinders, digital scales, drug testing kits, and "body-cleansing solutions to defeat drug tests." At one point, Detectives Kevin Holtry and Jason Harmon entered the Red Eye in an undercover capacity and purchased three containers of Twizted Potpourri and a metal pipe from Goggin. Testing showed that one of these containers contained plant material treated with JWH-019 and the other two containers contained plant material treated with AM-2201. Both JWH-019 and AM-2201 are synthetic cannabinoids. Thereafter, the police executed search warrants on the warehouse and the Red Eye, seizing approximately 30,000 containers of Twizted Potpourri from the warehouse and over 9,000 containers of Potpourri and 340 pipes from the Red Eye.

*Goggin*, 157 Idaho at 3-4, 333 P.3d at 114-15 (footnotes omitted).

At trial, the State's evidence showed that Peterson worked in the warehouse packaging "spice." It also showed that Peterson was carrying a bag containing "spice" and a pipe when found by police. When questioned by police, Peterson did not deny her involvement with the sale of the substance, but stated that she was unaware that the substance was illegal in Idaho. Nevertheless, the State charged Peterson with conspiracy to manufacture, deliver, or possess with intent to deliver a controlled substance. At trial, Peterson requested a mistake of fact instruction, arguing that because conspiracy was a specific intent crime, the State was obligated

2

to show that Peterson intended to commit an illegal act. In essence, Peterson argued that her mistaken belief that the substance was legal in Idaho was a defense to the charge of conspiracy to sell a controlled substance. At trial, the court gave both a general mistake of fact instruction and a mistake of law instruction. The mistake of fact instruction acknowledged that "[e]vidence was offered that at the time of the alleged offense the defendant mistakenly believed certain facts," and directed that the jury "should consider such evidence in determining whether the defendant had the required intent." The mistake of law instruction informed the jury as follows: "When the evidence shows that a person voluntarily did that which the law declares to be a crime, it is no defense that the person did not know that the act was unlawful or that the person believed it to be lawful." Thereafter, the jury found Peterson guilty of the conspiracy charge.

Following the trial, Peterson filed a motion for acquittal or a new trial, continuing to argue that the State was required to prove that she knew that it was illegal to sell the product in question. The district court held that it had erred by instructing the jury that a mistake of law was not a defense to the conspiracy charge because "a good faith belief that the object crime was not illegal is a defense to conspiracy." On that basis it granted the motion for a new trial.

The State appeals the district court's order for a new trial pursuant to Idaho Appellate Rule 11(c)(8).[1] The State argues that a conspiracy conviction requires that the State prove that a person agreed to "perform some act that is illegal" and that it need not prove that the defendant knew that the act was illegal.

## II.

## ANALYSIS

This appeal was stayed, pending the disposition of *Taylor*, ___ Idaho ___, 335 P.3d 31, because the parties acknowledged that the issues on appeal in this case were substantively the same as the issues raised in *Taylor*. In the trial court, Peterson and Taylor were represented by the same attorney, who filed substantially similar motions for acquittal or a new trial in both cases. Likewise, in both cases the district court granted the motion and the State appealed.

After reviewing the briefing in this case, we find no basis to distinguish this case from *Taylor* and *Goggin*. On appeal, Peterson argues that because conspiracy is a specific intent

---

[1]     Idaho Appellate Rule 11(c)(8) states: "An appeal as a matter of right may be taken . . . [f]rom the following judgments and orders of the district court in a criminal action . . . . An order granting or denying a motion for new trial."

crime, her mistake of law, believing that Idaho's law did not prohibit the possession or sale of the compounds in question, was a defense. Peterson's argument, that the court erred by instructing the jury that ignorance or mistake of law is not a defense to a conspiracy charge, is foreclosed by the Idaho Supreme Court's decision in *Goggin*, 157 Idaho at 13, 333 P.3d at 124 (2014), where the Court said:

> A person commits an illegal act by engaging in the activities prohibited by statute. Therefore, a person will have committed conspiracy when she agrees with another person to engage in activities prohibited by statute.
>
> For example, a person is guilty of conspiracy to deliver a controlled substance under Idaho Code section 37-2732(f) when she and another person agree to deliver a controlled substance. The statute does not require the State to prove that the defendant knew it was illegal to deliver a controlled substance. Under this analysis, then, to be convicted of conspiracy, a defendant must have simply intended to engage in the acts necessary to commit the underlying substantive offense. Thus, whether the defendant knows the acts are illegal is irrelevant.
>
> . . . .
>
> Other courts have interpreted similar conspiracy statutes to mean that the defendant must, with the mental state required by the underlying offense, only agree to engage in the conduct prohibited by the underlying offense, not that the defendant must know the acts are illegal. In *U.S. v. Feola*, the defendant was convicted of conspiracy under 18 U.S.C. § 371, which defines conspiracy as occurring when "two or more persons conspire . . . to commit any offense against the United States, . . . and one or more of such persons do any act to effect the object of the conspiracy." 420 U.S. 671, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975). In considering this issue, the Supreme Court found "no textual support for the proposition that to be guilty of a conspiracy a defendant in effect must have known that his conduct violated federal law." *Id.* at 687, 95 S. Ct. at 1265, 43 L. Ed. 2d at 554. Indeed, the conspiracy statute
>
>> makes it unlawful simply to "conspire . . . to commit any offense against the United States." A natural reading of these words would be that since one can violate a criminal statute simply by engaging in the forbidden conduct, a conspiracy to commit that offense is nothing more than an agreement to engage in the prohibited acts.
>
> *Id.* The Court also noted that in the past, it had "declined to require a greater degree of intent for conspiratorial responsibility than for responsibility for the underlying substantive offense." *Id.* at 688, 95 S. Ct. at 1266, 43 L. Ed. 2d at 555 (citing *United States v. Freed*, 401 U.S. 601, 91 S. Ct. 1112, 28 L. Ed. 2d 356 (1971)). Similarly, in *U.S. v. Haldeman,* a case the district court relied on when it decided to grant a new trial, the Circuit Court of Appeals for the District of Columbia stated: "a defendant does not have to be aware that he was violating a particular law, such as 18 U.S.C. § 371, so long as he had the conscious intent to do that which the law in fact forbids." *United States v. Haldeman*, 559 F.2d 31, 117 (D.C. Cir. 1976).

4

> In this case, because neither Idaho Code section 18-1701 nor Idaho Code section 37-2732(f) contain specific language providing for a mistake of law defense, Goggin's argument fails.

*Id*. In *Taylor*, the Idaho Supreme Court applied the rule in *Goggin* and reversed the district court's order granting Taylor a new trial on the conspiracy charges. *Taylor*, ___ Idaho at ___, 335 P.3d at 40. Therefore, we conclude that both the rule announced in *Goggin* and the application of that rule in *Taylor* establish that the district court erred in granting Peterson's motion for a new trial.

The order for a new trial is reversed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**