HORTON, Justice.
This is an appeal from the district court’s grant of declaratory judgment in favor of Green River Dairy, LLC, and four commodities dealers: Ernest Carter, Lewis Becker, Jack McCall, and Hull Farms (collectively “Sellers”). Appellant, Farmers National Bank (FNB), argues that the district court misinterpreted I.C. § 45-1802, a statutory lien provision, and, as a result, erred in granting Sellers a priority lien on collateral securing a loan previously made by FNB. We agree with FNB and vacate the district court’s grant of declaratory judgment in favor of Sellers.
I. FACTUAL AND PROCEDURAL BACKGROUND
FNB made ten loans to Green River in 2008 and 2009 to support Green River’s dairy operations.[1] In connection with the loans, Green River granted FNB a security interest in its dairy cows. After executing a security agreement, FNB properly filed a UCC-1F, farm products financing statement, with the Idaho Secretary of State on May 12, 2008. All parties agree that FNB properly attached its interest in the collateral and properly perfected its interest through the filing of a financing statement.
Sellers sold commodities to Green River on credit, which included hay and/or wheat products, as feed for Green River’s dairy cows. In conjunction with the sale of commodities to Green River, each seller filed lien notices with the Idaho Secretary of State pursuant to I.C. § 45-1804.
Green River defaulted on its loan repayment obligations to FNB. Accordingly, FNB took possession of Green River’s dairy cows that secured FNB’s loans. FNB sold the dairy cows at an auction held by Producers Livestock Marketing Association, the proceeds of which totaled $211,957.58. Despite FNB’s perfected security interest in Green River’s dairy cows, Sellers also claimed an interest in the dairy cows and the proceeds of the auction because the dairy cows had consumed liened agricultural products sold by Sellers to Green River.
FNB initiated this case on November 22, 2011, when it filed its Complaint for Declaratory Judgment. FNB asserted that Green River owed the bank $2,627,526.42. The amount claimed by FNB exceeded the total proceeds from the sale of the collateral. Further, FNB’s complaint stated that pursuant to I.C. § 28-9-101, the bank had a senior perfected security interest in all dairy cows owned by Green River and the proceeds from the sale of those dairy cows. FNB’s complaint asked the district court for: (1) a declaration of the respective priority rights of the parties in the proceeds of sale pursu *855 ant to I.C. § 28-9-101 and I.C. § 45-1801; (2) a declaration that FNB’s UCC-1F interest in the collateral was properly perfected and a first priority encumbrance on Green River’s dairy cows; and (3) a declaration that liens created pursuant to I.C. § 45-1802 in commodity sales do not extend to the dairy cows that consume the agricultural products subject to the lien. Each defendant named in FNB’s complaint individually filed an answer.
On March 5, 2012, FNB filed a motion for summary judgment and a memorandum in support. On May 8, 2012, the district court issued its Memorandum Decision Re: Plaintiffs Motion for Summary Judgment. The district court framed the issue before it as “whether an agricultural commodity producer’s lien created under I.C. § 45-1802 continues to exist upon the livestock that consume the agricultural product.” Ultimately, the district court held that commodity liens created pursuant to I.C. § 45-1802 on agricultural products did extend to livestock that consumed the liened agricultural products. Accordingly, the district court denied FNB’s motion for summary judgment and granted declaratory judgment in favor of Sellers. The district court issued its final judgment on May 30, 2012. FNB timely appealed.
II. STANDARD OF REVIEW
When reviewing a grant of summary judgment, this Court employs the same standard as the district court. Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). Summary judgment is proper when “the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” I.R.C.P. 56(c). A “district court may grant summary judgment to a non-moving party even if the party has not filed its own motion with the court.” Aardema v. U.S. Dairy Sys., Inc., 147 Idaho 785, 793, 215 P.3d 505, 513 (2009) (quoting Harwood v. Talbert, 136 Idaho 672, 677, 39 P.3d 612, 617 (2001)). Additionally, “[t]his Court freely reviews the interpretation of a statute and its application to the facts.” St. Luke’s Reg’l Med. Ctr., Ltd. v. Bd. of Comm’rs of Ada Cnty., 146 Idaho 753, 755, 203 P.3d 683, 685 (2009).
III. ANALYSIS
A. Statutory background for agricultural commodity dealer liens.
The primary issue presented in this appeal is whether an agricultural commodity lien that encumbers an agricultural product extends to livestock that consume the liened agricultural product. This hinges on the interpretation of I.C. § 45-1802, which provides:
An agricultural commodity producer or an agricultural commodity dealer who sells, or delivers under contract or bailment, an agricultural product has a lien on the agricultural product or the proceeds of the sale of the agricultural product as provided in section 45-1804, Idaho Code. The lien created in this chapter may attach regardless of whether the purchaser uses the agricultural product purchased to increase the value of his livestock or whether he uses the agricultural product purchased to maintain the value, health or status of his livestock without actually increasing the value of his agricultural product.
The Legislature enacted what would become I.C. § 45-1802 in 1983; as originally enacted the statute consisted of only the first sentence. 1983 Idaho Sess. L. ch. 202, § 1, p. 550. However, in 1989 the Legislature amended I.C. § 45-1802 by adding the second sentence. 1989 Idaho Sess. L. ch. 299, § 1, p. 746-47.
“Agricultural product” is defined as:
[W]heat, corn, oats, barley, rye, lentils, soybeans, grain sorghum, dry beans and peas, beans, safflower, sunflower seeds, tame mustards, rapeseed, flaxseed, leguminous seed or other small seed, or any other agricultural commodity, including any of the foregoing, whether cleaned, processed, treated, reconditioned or whether mixed, rolled or combined in any fashion or by any means to create a product used as animal, poultry or fish feed.
*856 1.C. § 45-1801(1). Notably, livestock are not included in the definition of “agricultural product.”
B. Statutory liens on agricultural products created under I.C. § 45-1802 do not continue in livestock that consume the liened agricultural products.
The district court concluded that I.C. § 45-1802 was unambiguous and provided that liens created by I.C. § 45-1802 continued in livestock that consumed liened agricultural products. The district court relied heavily on the term “uses” from the second sentence and referred to it as a “triggering verb” which, when read in context, created a lien in livestock that consume the liened agricultural product.
“The objective of statutory interpretation is to give effect to legislative intent.” State v. Yzaguirre, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007). “Such intent should be derived from a reading of the whole act at issue.” St. Luke’s Reg’l Med. Ctr., Ltd., 146 Idaho at 755, 203 P.3d at 685. “Statutory interpretation begins with ‘the literal words of the statute, and this language should be given its plain, obvious, and rational meaning.’ ” Seward v. Pac. Hide & Fur Depot, 138 Idaho 509, 511, 65 P.3d 531, 533 (2003) (quoting Jen-Rath, Co. v. Kit Mfg. Co., 137 Idaho 330, 335, 48 P.3d 659, 664 (2002)). “If the statutory language is unambiguous, ‘the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction.’ ” St. Luke’s Reg’l Med. Ctr., Ltd., 146 Idaho at 755, 203 P.3d at 685 (quoting Payette River Prop. Owners Ass’n v. Bd. of Comm’rs of Valley Cnty., 132 Idaho 551, 557, 976 P.2d 477, 483 (1999)). This is because “[t]he asserted purpose for enacting the legislation cannot modify its plain meaning.” Verska v. Saint Alphonsus Reg’l Med. Ctr., 151 Idaho 889, 892-93, 265 P.3d 502, 505-06 (2011). A statute is ambiguous where:
[T]he meaning is so doubtful or obscure that reasonable minds might be uncertain or disagree as to its meaning. However, ambiguity is not established merely because different possible interpretations are presented to a court. If this were the case then all statutes that are the subject of litigation could be considered ambiguous ____ [A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it.
BHA Investments, Inc. v. City of Boise, 138 Idaho 356, 358, 63 P.3d 482, 484 (2003) (internal citations and quotations omitted).
On appeal, neither Sellers nor FNB argue that the second sentence of I.C. § 45-1802 is ambiguous. Rather, each party adheres to different interpretations of what the statute means. FNB argues that I.C. § 45-1802 does not extend an agricultural lien on an agricultural product to livestock that consume the liened agricultural product. Conversely, Sellers argue that the statute unambiguously extends an agricultural lien in an agricultural product to livestock that consume the liened agricultural product.
As we stated in BHA Investments, Inc., the fact that two different interpretations of a statute are presented does not alone make a statute ambiguous. 138 Idaho at 358, 63 P.3d at 484. Rather, the statute’s meaning must be so doubtful or obscure that reasonable minds would be uncertain or doubtful as to the statute’s meaning. Such doubt and obscurity is not present in I.C. § 45-1802. Accordingly, we conclude that I.C. § 45-1802 is not ambiguous and use only the plain language of Chapter 18, Title 45 in order to give effect to the legislative intent behind I.C. § 45-1802.[2]
The majority of the parties’ textual arguments, as well as the district court’s discussion below, focused on the second sentence of I.C. § 45-1802. Accordingly, little attention is paid to the first sentence of the statute in the parties’ briefing. However, the first sentence is instrumental in interpreting the see *857 ond sentence, and, Chapter 18, Title 45 as a whole, because it delineates the scope of what can be the subject of an agricultural lien. The import of the first sentence of I.C. § 45-1802 is clear, it states “[a]n agricultural commodity producer or an agricultural commodity dealer who sells, or delivers under contract or bailment, an agricultural product has a lien on the agricultural product or the proceeds of the sale of the agricultural product as provided in [I.C. § ] 45-1804.”
Based on the plain language, the first sentence creates a lien in favor of a commodity producer or dealer in an “agricultural product” and/or in the “proceeds of the sale of the agricultural product.” As noted above, “agricultural product” is a defined term within Title 45. An agricultural product is:
[Wjheat, corn, oats, barley, rye, lentils, soybeans, grain sorghum, dry beans and peas, beans, safflower, sunflower seeds, tame mustards, rapeseed, flaxseed, leguminous seed or other small seed, or any other agricultural commodity, including any of the foregoing, whether cleaned, processed, treated, reconditioned or whether mixed, rolled or combined in any fashion or by any means to create a product used as animal, poultry or fish feed.
I.C. § 45-1801(1). Thus, the plain language of the first sentence of I.C. § 45-1802 allows a commodity producer or dealer to obtain a lien on any of the agricultural products listed in I.C. § 45-1801(1) or in the proceeds from the sale of any of the agricultural products listed in I.C. § 45-1801(1). Livestock, including dairy cows, are not an agricultural product that may be the subject of an agricultural lien. Accordingly, the plain language of the first sentence of I.C. § 45-1802 does not provide any basis for a commodity producer or dealer to maintain a lien right in livestock because the lien rights extend only to agricultural products and the proceeds of the sale of agricultural products.
Like the first sentence of I.C. § 45-1802, the second sentence is also clear and unambiguous on its face. It states that “[tjhe lien created in this chapter may attach regardless of whether the purchaser uses the agricultural product purchased to increase the value of his livestock or whether he uses the agricultural product purchased to maintain the value, health or status of his livestock without actually increasing the value of his agricultural product.” I.C. § 45-1802. The plain language of the second sentence in no way expands the scope of the agricultural lien created by the first sentence. Instead, the second sentence references “the lien created in this chapter,” which is a lien on an “agricultural product or the proceeds of the sale of the agricultural product” and clarifies that the lien will attach regardless of whether the purchaser uses the agricultural product to increase the value of his livestock or simply maintain their value.
Because the lien created by I.C. § 45-1802 only extends to “agricultural products” and “the proceeds of the sale of the agricultural product,” the district court erred in concluding that Sellers had an agricultural products lien on Green River’s livestock because livestock are not agricultural products.
In addition to the plain language of I.C. § 45-1802 supporting FNB’s interpretation, Chapter 45, Title 18, when read in its entirety, indicates that the agricultural lien created in I.C. § 45-1802 does not extend to livestock that consume liened agricultural products. We consider these additional provisions that comprise Chapter 45, Title 18, because legislative “intent should be derived from a reading of the whole act at issue.” St. Luke’s Reg’l Med. Ctr., Ltd., 146 Idaho at 755, 203 P.3d at 685. Specifically, I.C. §§ 45-1803 and 1805 support FNB’s interpretation that the lien created by I.C. § 45-1802 does not extend to livestock.
Idaho Code § 45-1803 states that “[tjhe lien created by section 45-1802, Idaho Code, attaches to the agricultural product and to the proceeds of the subsequent sale of the agricultural product on the date the agricultural product is physically delivered to the purchaser or on the date any final payment is due, and unpaid.” This provision reinforces FNB’s interpretation by reiterating what products or proceeds a commodity lien may attach to. The terms of I.C. § 45-1803 only allow for the attachment of a lien to an “agricultural product” or the “proceeds of the subsequent sale of the agricultural product,” not livestock. Thus, I.C. § 45-1803 echoes *858 I.C. § 45-1802 and provides that an agriculture commodity lien can only attach to agricultural products or the proceeds of the sale of those products.
Next, I.C. § 45-1805 states:
The lien created by section 45-1802, Idaho Code, is preferred to a lien or security interest in favor of a creditor of the purchaser, regardless of whether the creditor’s lien or security interest attaches to the agricultural product or proceeds of the sale of the agricultural product before or after the date on which the lien created by section 45-1802, Idaho Code, attaches.
Like I.C. § 45-1803, I.C. § 45-1805 also reinforces FNB’s interpretation of I.C. § 45-1802. Idaho Code § 45-1805 supports FNB’s interpretation because it only gives agricultural liens priority over prior liens or security interests where the prior lien or security interest was in an “agricultural product” or “proceeds of the sale of the agricultural product,” not livestock. Thus, I.C. § 45-1805 supports our conclusion that I.C. § 45-1802 does not create a lien on livestock, only in “agricultural products” and the “proceeds of the sale of the agricultural product.”[3]
The statutory framework of Chapter 45, Title 18, as a whole, reflects clear legislative intent that agricultural commodity liens only extend to “agricultural products” and to the “proceeds of the sale of agricultural products.” Had the Legislature wished to include livestock in the definition of “agricultural product” it easily could have. However, it did not. Based on the plain language of I.C. § 45-1802, and Chapter 45, Title 18 as a whole, we hold that the district court erred in concluding that Sellers had a lien on Green River’s dairy cows that was senior to FNB’s security interest.
Because I.C. § 45-1802 is not ambiguous, this Court has not and will not resort to methods of statutory construction in order to derive the legislative intent behind the statute. Accordingly, the parties’ arguments relating to various canons of construction and legislative history are irrelevant to this Court’s determination in this ease.
C. Attorney fees.
Sellers separately request attorney fees under the following statutory theories. Thornton, without any argument, requests attorney fees pursuant to I.C. §§ 45-1809 and 12-120(3). Carter and McCall request attorney fees pursuant to I.C. §§ 45-1809 and 12-120(3). Becker requests attorney fees pursuant to I.C. § 45-1809. Hull Farms requests attorney fees pursuant to I.C. §§ 45-1809 and 12-120(3). Also, FNB requests attorney fees pursuant to I.C. § 45-1809.
Attorney fees pursuant I.C. § 12-120(3) are not awardable in this case because there was no commercial transaction between the parties. See Carrillo v. Boise Tire Co., Inc., 152 Idaho 741, 756, 274 P.3d 1256, 1271 (2012). Rather, they simply have made claims to identical collateral. Accordingly, all requests for attorney fees pursuant to I.C. § 12-120(3) are without merit. No party is entitled to attorney fees under I.C. § 45-1809. FNB is not entitled to an award of attorney fees under I.C. § 45-1809 because it has not claimed an agricultural commodity lien. Sellers are not entitled to an award of attorney fees under I.C. § 45-1809 because they have not prevailed.
IV. CONCLUSION
We vacate the district court’s declaratory judgment in favor of Sellers and find that between FNB and Sellers, FNB’s security interest in Green River’s dairy cows is superior to that of Sellers. No attorney fees are awarded on appeal. Costs on appeal to FNB.
Justice EISMANN and Justices Pro Tem KIDWELL and SCHROEDER concur.

. The loans made to Green River were personally backed by Herculano and Frances Alves. The Respondent’s brief of Green River and the Alveses was due on December 24, 2012; however, it was never filed. Accordingly, the Court, on January 11, 2013, ordered that the appeal proceed solely on the briefing filed by Sellers.

. The United States Bankruptcy Court for the District of Idaho faced the precise issue before this Court in this case in In Re Goedhart & Goedhart, 03.3 IBCR 167 (2003). In that case, the bankruptcy court concluded that I.C. § 45-1802 was unambiguous and that the plain language of the statute did not extend agricultural liens to livestock that consumed liened agricultural products. Id. at 170.

. In addition, the plain language of I.C. § 45-1805 reveals a serious flaw in the district court's analysis of the parties' competing priority rights. Even if the second sentence of I.C. § 45-1802 were somehow construed to extend lien rights to livestock that consume liened agricultural products, such a lien would not have priority over a prior perfected security interest in the livestock because the plain language of I.C. § 45-1805 only gives priority to commodity liens in agricultural products or their proceeds, not livestock.