IN THE SUPREME COURT OF THE STATE OF IDAHO

Docket No. 41004

STATE OF IDAHO,                              )
                                             )          Boise, December 2014 Term
    Plaintiff-Respondent,            )
                                             )          2015 Opinion No. 77
v.                                           )
                                             )          Filed: August 20, 2015
SHANNON MARIE MC KEAN, aka                   )
SHANNON MARIE MC KEAM,                       )          Stephen Kenyon, Clerk
                                             )
    Defendant-Appellant.             )

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Molly J. Huskey, District Judge.

The judgments of conviction are <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

HORTON, Justice.

Shannon McKean appeals from her judgment of conviction, entered following a jury verdict, for five counts of possession of a controlled substance with intent to deliver and two counts of aiding and abetting the delivery of a controlled substance. McKean argues the district court erred by determining that a substance known as AM-2201 was a controlled substance under the version of Idaho Code section 37-2705(d)(30) then in effect. McKean further argues that the district court erred by excluding laboratory reports relating to the products McKean was charged with possessing and delivering. These reports stated that test samples of the products did not show the presence of illegal synthetic cannabinoids. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal relates to McKean's possession and sale of the substance commonly known as "spice."[1] In May of 2012, an undercover officer made two purchases of a product called Fire

_____
[1] "Spice" is a street name for synthetic marijuana. *State v. Goggin*, 157 Idaho 1, 3 n.1, 333 P.3d 112, 114 n.1 (2014).

1

N' Ice from McKean at her place of business, Smoke Effects, in Caldwell. This product contained substances known as JWH-122 and JWH-210. On June 13, 2012, McKean was charged by indictment with two counts of aiding and abetting delivery of a controlled substance arising from her sales of the Fire N' Ice.

On June 6, 2012, officers executing warrants searched Smoke Effects and McKean's home. In McKean's home, officers discovered ninety-one packages of a product called Scooby Snax Potpourri,[2] which contained AM-2201. Officers confiscated numerous packages of potpourri from Smoke Effects, including packages labeled Fire N' Ice, Mad Hatter, AK-47, Scooby Snax, and Down 2 Earth. The Fire N' Ice again contained JWH-122 and JWH-210. The Mad Hatter, AK-47, Scooby Snax, and Down 2 Earth each contained AM-2201.

McKean was indicted in August of 2012 on five counts of possession of a controlled substance with the intent to deliver and possession of drug paraphernalia in connection with the items seized in the searches. On October 1, 2012, the two cases were consolidated.

The consolidated cases went to trial. Before trial, the State filed a motion seeking a determination that JWH-122, JWH-210, and AM-2201 were Schedule I controlled substances because the substances were synthetic equivalents of substances contained in Cannabis. McKean did not dispute that JWH-122 and JWH-210 were controlled substances. However, she challenged the State's claim that AM-2201 was a controlled substance. Following an evidentiary hearing, the district court concluded that the question was one of statutory interpretation and that AM-2201 was a controlled substance.

The State filed a motion in limine requesting that the district court preclude McKean from presenting evidence and argument regarding ignorance of the law, mistake of fact, or lack of knowledge that the substances McKean possessed were controlled substances. The district court prohibited McKean "from presenting evidence that she did not know the substance she possessed was an illegal substance." The district court denied the State's motion to preclude McKean from presenting a mistake of fact defense, reasoning that the State needed to prove beyond a reasonable doubt that McKean "possessed the substance knowing the substance was a synthetic cannabinoid."

The jury trial took place in early February of 2013. During opening statements, defense counsel represented that McKean relied upon statements from laboratory reports (the Sample

_____

[2] "Potpourri" is also a street name for synthetic marijuana. *Goggin*, 157 Idaho at 3 n.1, 333 P.3d at 114 n.1.

Test reports) provided by the internet websites where McKean purchased her products. The Sample Test reports indicated that samples of the products had been tested and that the samples did not contain "controlled substances." After the State objected, the district court excluded the Sample Test reports, concluding: (1) the Sample Test reports went to mistake of law, and as such, were irrelevant; (2) that the Sample Test reports were being offered for a hearsay purpose; and (3) the evidence should be excluded pursuant to I.R.E. 403 "because it's going to confuse the jury about the mistake of law and mistake of fact issues."

The jury found McKean guilty of five counts of possession of a controlled substance with the intent to deliver in violation of Idaho Code section 37-2732(a)(1)(B), and two counts of aiding and abetting delivery of a controlled substance. McKean was acquitted of possessing drug paraphernalia. Judgment was entered on April 25, 2013. McKean timely appealed.

## II. STANDARD OF REVIEW

"[I]nterpretation of a statute is a question of law over which this Court exercises free review." *State v. Shackelford*, 155 Idaho 454, 457, 314 P.3d 136, 139 (2013) (quoting *State v. Payne*, 146 Idaho 548, 575, 199 P.3d 123, 150 (2008)). "The question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *State v. Sheldon*, 145 Idaho 225, 228, 178 P.3d 28, 31 (2008) (quoting *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006)).

## III. ANALYSIS

McKean raises two issues on appeal. The first is whether the district court erred in concluding that AM-2201 was a controlled substance as a matter of law. The second issue is whether the district court erred by excluding evidence of the Sample Test reports. We address these issues in turn.

**A. AM-2201 was a Schedule I controlled substance under the version of Idaho Code section 37-2705 in effect at the relevant time.**

In March of 2011, the Legislature expanded the range of synthetic cannabinoids covered by Schedule I of the Uniform Controlled Substances Act. 2011 Idaho Sess. L. ch. 47, § 1, pp. 111–12. At the time of McKean's offenses, the statute provided:

(a) The controlled substances listed in this section are included in schedule I.

. . . .

(d) Hallucinogenic substances. Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances . . . .

3

. . . .

(30) *Tetrahydrocannabinols or synthetic equivalents of the substances contained in the plant, or in the resinous extractives of Cannabis*, sp. and/or *synthetic substances*, derivatives, and their isomers with similar chemical structure *such as the following*:

>i. Tetrahydrocannabinols:
>
>. . . .
>
>ii. The following synthetic drugs:
>
>>a. *Any compound structurally derived from 3-(1-naphthoyl)indole* or 1H-indol-3-yl-(1-naphthyl)methane by substitution at the nitrogen atom of the indole ring *by alkyl,* alkenyl, cycloalkylmethyl, cycloalkylethyl or 2-(4-morpholinyl)ethyl, whether or not further substituted in the indole ring to any extent, whether or not substituted in the naphthyl ring to any extent.

I.C. § 37-2705 (2011).[3]

At the hearing on the State's motion for a determination that AM-2201 was a controlled substance, the district court received testimony from the parties' experts regarding the chemical structure of AM-2201. The State contended that AM-2201 constituted a "compound structurally derived from 3-(1-naphthoyl)indole . . . by substitution at the nitrogen atom of the indole ring by alkyl." The experts agreed that AM-2201 has a base structure of 3-(1-naphthoyl)indole and that AM-2201 is created by substitution of the nitrogen atom of the indole ring with a "haloalkyl." The parties' experts had different opinions, however, as to the meaning of "alkyl." The State's

---

[3] In March of 2012, the legislature amended Idaho Code section 37-2705 as to synthetic cannabinoids. 2012 Idaho Sess. L. ch. 181, § 1, p. 475. The statute was amended to provide:

>(d) Hallucinogenic substances. Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances . . . .
>
>. . . .
>
>(31) Tetrahydrocannabinols or synthetic equivalents of the substances contained in the plant, or in the resinous extractives of Cannabis, sp. and/or synthetic substances, derivatives, and their isomers with similar chemical structure such as the following:
>
>. . . .
>
>ii. The following synthetic drugs:
>
>a. Any compound structurally derived from 3–(1–naphthoyl)indole or 1H–indol–3–yl–(1–naphthyl)methane by substitution at the nitrogen atom of the indole ring ~~by alkyl, alkenyl, cycloalkylmethyl, cycloalkylethyl or 2 (4 mor pholinyl)ethyl~~ **to any extent**, whether or not further substituted in the indole ring to any extent, whether or not substituted in the naphthyl ring to any extent.

*Id.* (deleted language indicated by strikethrough; added language indicated in bold).

4

expert opined that a haloalkyl falls under the "umbrella term alkyl." McKean's expert contended that a haloalkyl is distinct from an alkyl.

The district court concluded that AM-2201 was a controlled substance. However, the district court did not base its decision on the definition of alkyl. The district court explained:

> [T]he discussion today and yesterday has really been whether, under subsection 37-2705[(d)(30)], whether the word alkyl encompasses haloalkyls, or whether haloalkyls are a different kind of substitution. And the Court finds that that is irrelevant, for purposes of this discussion. Because whether it is an alkyl or whether it is a haloalkyl merely broadens or narrows the examples of kinds of substances that the legislature intends and passed to be controlled substances.
>
> And so whether it is an alkyl or a haloalkyl does not determine whether or not it is a controlled substance. It is a controlled substance because the lists of parent structures and substitutions are merely examples of the kinds of things that could be controlled substances. And so the Court finds that the statute is unambiguous, and that "such as" merely gives a list of examples, that it does not limit the statute to those substances listed.

The district court went on to explain that even if the statute was ambiguous, the legislative intent was to "cut as broad a swath, or to create as broad a category as it could to prohibit and limit controlled substances that were the synthetic equivalents of [the substances contained in Cannabis]." McKean contends that the district court erred in this analysis.

"Statutory interpretation begins with 'the literal words of the statute, and this language should be given its plain, obvious, and rational meaning.' " *Seward v. Pac. Hide & Fur Depot*, 138 Idaho 509, 511, 65 P.3d 531, 533 (2003) (quoting *Jen–Rath Co. v. Kit Mfg. Co.*, 137 Idaho 330, 335, 48 P.3d 659, 664 (2002)). "The objective of statutory interpretation is to give effect to legislative intent." *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007). "Such intent should be derived from a reading of the whole act at issue." *St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs of Ada Cnty.*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009). "If the statutory language is unambiguous, 'the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction.' " *Id.* (quoting *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley Cnty.*, 132 Idaho 551, 557, 976 P.2d 477, 483 (1999), *overruled on other grounds* by *City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012)). A statute is ambiguous when:

> [T]he meaning is so doubtful or obscure that reasonable minds might be uncertain or disagree as to its meaning. However, ambiguity is not established merely because different possible interpretations are presented to a court. If this were the case then all statutes that are the subject of litigation could be considered

ambiguous . . . . [A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it.

*Farmers Nat'l Bank v. Green River Dairy, LLC*, 155 Idaho 853, 856, 318 P.3d 622, 625 (2014) (alterations in original) (quoting *BHA Invs., Inc. v. City of Boise*, 138 Idaho 356, 358, 63 P.3d 482, 484 (2003)).

McKean argues that the Court of Appeals correctly decided this issue in *State v. Alley*, 155 Idaho 972, 318 P.3d 962 (Ct. App. 2014). There, the Court of Appeals addressed whether AM-2201 was a controlled substance under the 2011 version of Idaho Code section 37-2705(d)(30)(ii)(a). *Id*. at 976, 318 P.3d at 966. In *Alley*, as in this case, the parties disputed and presented conflicting expert testimony regarding "whether the term 'alkyl' as used in former I.C. § 37-2705(d)(30)(ii)(a) can be read more broadly to include 'alkyl halides' . . . ." *Id.* at 977, 318 P.3d at 967. The Court of Appeals concluded that the question "[w]hether AM-2201 has a similar chemical structure to one of the example substances" identified in Idaho Code section 37-2705(d)(30) is a question of fact to be resolved by the jury. *Id.* at 981, 318 P.3d at 971.

We reach a different conclusion than the Court of Appeals and hold that AM-2201 is a controlled substance as a matter of law. In *State v. Goggin*, 157 Idaho 1, 333 P.3d 112 (2014), we signaled our disagreement with the holding in *Alley*:

> In *Alley*, the Court of Appeals concluded that it was a question of fact as to whether the substance in Twizted Potpourri, AM–2201, was an illegal synthetic cannabinoid since its specific chemical formulation was not listed in the non-exclusive list of example synthetic equivalents following the "such as" language in I.C. § 37–2705(d)(30). 155 Idaho at 980–81, 318 P.3d at 970–71. *However, the plain language used by the Legislature banned all forms of synthetic marijuana and the subsequent list of specific chemical formulations merely provided examples of the illegal substances*. The fact that AM–2201 had a slight variation from the substances specifically listed as exemplars does not change the fact that the Legislature intended to ban all types and forms of synthetic marijuana, regardless of their chemical formulations.

157 Idaho at 6 n.4, 333 P.3d at 117 n.4.

"The question whether a substance is designated in the [Uniform Controlled Substances] Act as a controlled substance is a question of law for the court, and not the jury, to decide." *State v. Kellogg*, 102 Idaho 628, 630–31, 636 P.2d 750, 752–53 (1981) (quoting *State v. Hobbs*, 101 Idaho 262, 263, 611 P.2d 1047, 1048 (1980)). Idaho Code section 37-2705(d)(30) "banned all forms of synthetic marijuana and the subsequent list of specific chemical formulations merely provided examples of the illegal substances." *Goggin*, 157 Idaho at 6 n.4, 333 P.3d at 117 n.4.

When a statute includes a non-exclusive list of examples, whether something is within the purview of the statute is a question for the court. *See e.g., State v. Hart*, 135 Idaho 827, 829–31, 25 P.3d 850, 852–54 (2001) (when statute defined traumatic injury as "a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by physical force," whether bruising was included was not a question of fact for the jury but was one of law). Thus, the district court did not err in concluding that the question whether AM-2201 was a controlled substance was a question of law, not fact.

Idaho Code section 37-2705 identifies the controlled substances included in Schedule I. Schedule I hallucinogens include "synthetic substances, derivatives, and their isomers with similar chemical structure such as the following: (i) Tetrahydrocannabinols . . . (ii) The following synthetic drugs." I.C. § 37-2705(d)(30)(ii) (2011). As the Court of Appeals noted:

> The phrase "with similar chemical structure" raises the question of "similar to what?" Alley argues that it refers to substances having a chemical structure similar to tetrahydrocannabinols (THC), with the list that follows providing relevant examples. On an initial, casual reading, normal English syntax might appear to support Alley's contention; it would seem that "similar" refers to antecedents in the same sentence, that is, THC or synthetic equivalents of substances contained in the marijuana plant. On closer examination, however, it is apparent that this cannot be the intended meaning. First, the listed chemicals under subpart (i) are themselves forms of THC. It would be nonsensical to interpret the statute as referring to "THC and synthetic substances with similar chemical structure to THC such as THC." Second, it appears to be undisputed that the other synthetic drugs listed in subpart (ii) as being illustrative of substances "with similar chemical structures" are not, in fact, similar in chemical structure to THC. Therefore, the phrase "with similar chemical structure" must not refer to substances with chemical structures similar to THC. The alternative interpretation of the statute, which yields a sensible result and does not render subpart (i) surplusage, is that the phrase refers to substances with chemical structures similar to those substances listed in subparts (i) and (ii).

*Alley*, 155 Idaho at 980, 318 P.3d at 970. We agree with this interpretation. Thus, hallucinogenic substances include synthetic substances, derivatives, and their isomers with similar chemical structures to the synthetic drugs listed in Idaho Code section 37-2705(d)(30)(ii).

"Isomers" are defined as "one of two or more compounds, radicals, or ions that contain the same number of atoms but differ in structural arrangement." *Merriam Webster's Collegiate Dictionary* 621 (10th ed. 1993). "Derivatives" are defined as "a chemical substance related structurally to another substance and theoretically derivable from it." *Id.* at 311. A list prefaced

by the words "such as," means that "the legislature clearly meant the list to be non-exclusive." *Hart*, 135 Idaho at 832, 25 P.3d at 855.

Here, Schedule I hallucinogens include "synthetic substances, derivatives, and their isomers with similar chemical structure" to the synthetic drugs which contain "[a]ny compound structurally derived from 3-(1-naphthoyl)indole or 1H-indol-3-yl-(1-naphthyl)methane by substitution at the nitrogen atom of the indole ring by alkyl, alkenyl, cycloalkylmethyl, cycloalkylethyl or 2-(4-morpholinyl)ethyl . . . ." I.C. § 37-2705(d)(30)(ii)(a) (2011). It is undisputed that AM-2201 is a compound structurally derived from 3-(1-naphthoyl)indole. As in *Alley*, the dispute centers on the word "alkyl." The Court of Appeals in *Alley* and the parties below expended great effort in defining the word alkyl and considering whether the word encompasses a haloalkyl. This analysis is unnecessary because this determination is not dispositive. AM-2201 is a synthetic substance with a *similar chemical structure* to a compound structurally derived from 3-(1-naphthoyl)indole or 1H-indol-3-yl-(1-naphthyl)methane by substitution.

**B. The district court did not err in excluding the Sample Tests reports.**

In McKean's opening statement, her attorney stated: "so the evidence you're going to hear is that [McKean] relied upon the statements from the internet websites, [and] the lab reports that she was sent saying that they didn't contain controlled substances." The State objected, arguing that McKean was attempting to present a mistake of law defense and that the Sample Test reports were inadmissible hearsay. McKean argued that the Sample Test reports were admissible to show mistake of fact.

The district court held that the Sample Test reports "establish a mistake of law, i.e., the substance that [McKean] possessed was not a controlled substance. This goes to whether or not the substances are legal or illegal, not to what the substances are. And so the Court is going to exclude this on a mistake of law basis." The district court revisited the issue the following day and explained that the Sample Test reports were not relevant as they did not make the fact that McKean knew she possessed a synthetic cannabinoid more or less likely. The district court also concluded that if it "were to get to the hearsay issue, the Court finds that this is not a document on which she could rely, such that it would have an effect on the listener, because it very clearly does not apply to the samples that she obtained." Finally, the district court concluded that even if

the evidence was relevant, "under the 403 balancing the Court is going to find that admission of this is going to be extraordinarily confusing for the jury."

McKean argues that the district court erred because the Sample Test reports were relevant to a mistake of fact defense because they tended to show that she did not believe that she possessed synthetic cannabinoids. The State argues that the district court properly concluded that the reports were relied upon to show a mistake of law and were therefore, irrelevant.

"This Court freely reviews the question of relevancy as an issue of law." *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. "All relevant evidence is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible." I.R.E. 402.

The crime of possession of a controlled substance with the intent to deliver pursuant to Idaho Code section 37-2732(a)(1)(B) "does not expressly require a mental element . . . ." *Goggin*, 157 Idaho at 7, 333 P.3d at 118. Rather, it is a general intent crime. *Id*.; *see also State v. Fox*, 124 Idaho 924, 926, 866 P.2d 181, 183 (1993). " '[T]he intent required by I.C. § 18-114 is not the intent to commit a crime, but is merely the intent to knowingly perform' the prohibited act." *Goggin*, 157 Idaho at 7, 333 P.3d at 118 (quoting *Fox*, 124 Idaho at 926, 866 P.2d at 183). "[D]elivery under section 37-2732(a) only requires the knowledge that one is delivering the substance." *Id.* "This knowledge element requires that the defendant know the identity of the substance," *id.*; or believe it to be another controlled substance. *State v. Amelia*, 144 Idaho 332, 334–35, 160 P.3d 771, 773–74 (Ct. App. 2007).

As noted, McKean was convicted of five counts of possession of a controlled substance with intent to deliver and two counts of aiding and abetting the delivery of a controlled substance. Each of the charges alleged that the controlled substance at issue was "a synthetic drug equivalent to Tetrahydrocannabinol or Cannabis." Accordingly, as in *Goggin*, if McKean knew the "[p]otpourri contained synthetic cannabinoids, she had the mental state necessary for conviction." *Goggin*, 157 Idaho at 8, 333 P.3d at 119. In order to be relevant, the proffered evidence needed to have a tendency to make it more or less probable that McKean knew the substances she was charged with possessing and delivering were synthetic cannabinoids.

The statutory basis for a defense based upon mistake of fact is Idaho Code section 18-201, which provides that "[p]ersons who committed the act or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent" are not "capable" of committing crimes. Thus, the defendant's ignorance of the identity of a substance would be a defense to a charge of possession of a controlled substance. *Goggin*, 157 Idaho at 7, 333 P.3d at 118. For example, if a defendant believed "a powdery substance in a package" was sugar instead of methamphetamine, then the defendant would not be guilty of possession of methamphetamine. *Id.* (citing *State v. Armstrong*, 142 Idaho 62, 65, 122 P.3d 321, 324 (Ct. App. 2005)).

However, whether a defendant knew that it was illegal to possess a substance is not relevant. *Fox*, 124 Idaho at 926, 866 P.2d at 183. This is because "[i]gnorance of the law is not a defense." *Id.* In *Fox*, this Court upheld the exclusion of exhibits tending to establish that the defendant was ignorant of ephedrine's illegality because they were irrelevant and therefore, inadmissible. *Id.* By contrast, in *State v. Lamphere*, this Court concluded that evidence tending to show that the defendant "did not know the nature of the residue in the vial that he possessed," was "relevant to the issue of knowledge of what the substance was, an element of the offense of possession of a controlled substance." *State v. Lamphere*, 130 Idaho 630, 633, 945 P.2d 1, 4 (1997). We recently reaffirmed this distinction in *Goggin*, when we concluded that arguments as to the defendant's "ignorance of the illegality of the synthetic cannabinoids in the Twizted Potpourri are irrelevant." *Goggin*, 157 Idaho at 8, 333 P.3d at 119.

Here, as in *Lamphere*, McKean argued she did not know the nature of the product she possessed and she did not know that she possessed synthetic cannabinoids. However, while mistake of fact is a legitimate defense, we conclude that the district court did not err in excluding the Sample Test reports as irrelevant. McKean testified as part of an offer of proof regarding the Sample Test reports:

> **Q [Counsel for McKean]:** Did you know that any of these products you were selling contained synthetic drugs or synthetic cannabinoids or synthetic marijuana?
>
> **A [McKean]:** No. I had never heard the word cannabinoid until trial.
>
> . . . .
>
> **Q:** Why is it that you believed or didn't know that these substances contained synthetic drugs or synthetic cannabinoids or synthetic marijuana?
>
> **A:** Because the websites that I went to told me – or it says right on them that they are 50 state legal. They send you an email saying what's – the lab results that

came with it that tell you what's in it and what's not in it, basically. And it – an every order you get, you also get a hard copy in the package, same lab results, saying what's – what – what's not in it.

. . . . .

**Q [Counsel for the State]:** And yet every shipment came with a lab report saying that it did not contain synthetic cannabinoids?

**A:** I don't know if the lab reports say anything about cannabinoids on it. All I know is they sent me one with every shipment.

The Sample Test reports purported to contain an "[a]nalysis of your test sample for the presence of synthetic cannabinoids," provided the name of the tested product such as "Scooby Snax Potpourri," and represented that the sample "was found not to contain any synthetic cannabinoids."

The inquiry is whether the Sample Test reports made the fact that McKean had knowledge that she possessed synthetic cannabinoids more or less likely. While McKean maintained that she did not believe she possessed synthetic cannabinoids because of the Sample Test reports, her testimony unmistakably demonstrates that McKean did not rely on the Sample Test reports to formulate a belief as to the identity of the substances she possessed and delivered. Indeed, McKean denied familiarity with the term cannabinoid prior to trial. Thus, based upon her testimony, the Sample Test reports had no relationship with her knowledge of the identity of the substances. Instead, McKean's testimony establishes that she relied on the Sample Test reports as demonstrating that it was legal to possess and distribute the products. For this reason, we hold that the district court did not err when it concluded that the Sample Test reports were offered to show a mistake of law rather than a mistake of fact and thus, were irrelevant and inadmissible.

## IV. CONCLUSION

We conclude the district court did not err in declaring AM-2201 to be a controlled substance as a matter of law. We further hold that the district court did not err in excluding evidence regarding the Sample Test reports. For these reasons, we affirm the judgments of conviction in the consolidated cases.

Chief Justice J. JONES, Justice EISMANN, BURDICK and Justice Pro Tem WALTERS, **CONCUR**.