**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket Nos. 48301 & 48302**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | **Boise, June 2022 Term** |
| | ) | |
| **v.** | ) | **Filed: November 2, 2022** |
| | ) | |
| **DARIN M. OGDEN,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant/Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Michael J. Reardon, District Judge.

The judgment of conviction for sexual battery is <u>affirmed</u>. The judgment of conviction for sexual exploitation of a child is <u>vacated</u> and <u>remanded</u> for a new trial.

Nevin, Benjamin & McKay LLP, Boise, attorney for Appellant. Dennis Benjamin argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. Andrew Wake argued.

---

BEVAN, Chief Justice.

Darin Ogden appeals from his convictions for one count of sexual exploitation of a child and one count of sexual battery. Ogden argues the convictions should be vacated because of several erroneous evidentiary rulings made by the district court, which deprived Ogden of his constitutional right to confront witnesses and present a defense. Alternatively, Ogden argues his sentences should be vacated because the court considered unreliable information related to earlier conduct for which he had been acquitted. Ogden also requests that the presentence investigation report be redacted to omit those allegations.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 4, 2018, Shelly Millet called 911 around 3 a.m. to report that her 16-year-old daughter, V.H., had been kidnapped by a drug dealer named Michael Roller. Millet was with Ogden, a friend from high school, at the time she called police. Millet advised officers Ogden

1

hangs out at her house and V.H. views him as a "father figure." About thirty minutes later, V.H. called Millet and officers went to bring her home. After V.H. returned home, she informed one of the responding officers, Detective Brady, that she met Roller through Ogden, but the two do not get along. Based on Detective Brady's conversation with V.H., he became concerned Roller and Ogden had been grooming V.H. for a sexual relationship. Millet looked through V.H.'s phone and found several explicit photos and videos of V.H. and gave officers permission to confiscate the phone. V.H. admitted she had taken the photos and videos at Roller's direction. Officers reviewed V.H.'s phone and also discovered text messages in which she discussed having sexual intercourse with Ogden.

Detective Brady spoke with V.H. again on September 6, 2018. In reviewing V.H.'s phone, Detective Brady found hundreds of phone calls and texts between V.H. and Ogden. During another interview with Detective Brady on September 12, 2018, V.H. made allegations against Ogden. The September 12, 2018, police report is not in the record, so it is unclear what specific allegations V.H. made at that time; however, the next day, officers obtained a warrant to seize Ogden's cell phone. Officers found explicit photographs of V.H. on Ogden's phone.

Grand juries indicted Ogden on four counts of lewd conduct with a minor under sixteen, one count of sexual battery of a minor child sixteen or seventeen, one count of disseminating material harmful to minors, and, in a consolidated case, one count of sexual exploitation of a child. A jury ultimately acquitted Ogden of the four counts of lewd conduct with a minor under sixteen and one count of disseminating materials harmful to minors. The jury found Ogden guilty of sexual battery and sexual exploitation of a minor.

The sexual battery charge alleged that "between April 17, 2018, and September 2018, Ogden committed sexual battery by having lewd contact with and/or upon the body of a minor, V.H. a child sixteen (16) or seventeen (17) years of age, to-wit: sixteen (16) years old, by genital-genital contact and/or manual-genital contact and/or oral-genital contact, with the intent to arouse, appeal to, or gratify the lust, passion, or sexual desire of the defendant and/or said minor child, where the defendant was over the age of eighteen (18) years, to-wit: forty-four (44) years and at least five (5) years older than V.H."

The sexual exploitation of a child charge alleged that "between April 2016 and September 2018, Ogden did knowingly and willfully commit sexual exploitation of a child by causing, inducing or permitting V.H., a child under the age of eighteen, to wit: fifteen (15) years old to

engage in, or be used for, explicit sexual conduct for the purpose of producing or making an image or images which exploited V.H. by photographing her nude as she was bent over. The complaint specified the photograph was taken "on or about the 30th day of July, 2018."[1]

Prior to trial, Ogden filed several motions in limine in support of his defense that he was "set up" in this case. Ogden alleged V.H. had essentially joined a drug gang, was doing drugs, and hanging out with a known enemy of Ogden – Michael Roller.[2] Ogden also pointed to another third party's involvement with V.H., Ty Birchfield, and noted that Birchfield was under federal indictment for running a drug operation.[3] Ogden alleged that V.H. had lied and stated Ogden abused her to cover for Roller and Birchfield.

Ogden's first motion in limine sought to introduce expert testimony pursuant to Idaho Rule of Evidence 702, concerning "the fact that drug gangs exist and operate in Boise, Idaho, general information on how drug gangs operate, to include gang tactics, which are topics that are outside of a likely jurors [sic] knowledge and experience." The State filed a motion to exclude Ogden's expert witness, arguing Ogden's expert witness disclosure was deficient and irrelevant.

A few months later Ogden filed another motion in limine, this time asking the district court to allow the defense to cross-examine V.H. concerning her relationship, sexual behavior, and drug use with Roller during the months of July and August 2018 pursuant to Idaho Rule of Evidence 412(b)(4) and (b)(5). Ogden argued V.H.'s involvement with Roller provided motive for her to lie about her alleged sexual contact with Ogden. Ogden alleged V.H.'s sexual behavior with Roller and others in the months of July and August 2018 culminated in Millet and Ogden calling 911 and was the catalyst for the charges alleged against Ogden.

At a hearing on the motion, Ogden's counsel explained that the defense theory of the case was that Ogden was "set up." Ogden's counsel cited the chronology of V.H.'s internet searches and communications to argue that she did not start educating herself on sexual conduct until after

_____

[1] V.H. turned sixteen on April 17, 2018. It is unclear why the State charged Ogden with sexual exploitation of a child by causing, inducing or permitting V.H., a child under the age of eighteen, to wit: *fifteen (15) years old* to engage in, or be used for, explicit sexual conduct for the purpose of producing or making an image or images which exploited V.H., when the alleged photograph was taken on July 30, 2018, after V.H. had already turned sixteen.

[2] Roller was charged in a separate case where he pleaded guilty to sexual battery of a minor child sixteen or seventeen years of age, and received an indeterminate 30-year sentence, with the first seven years fixed.

[3] Birchfield was charged in federal court with possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime. He pleaded guilty to both counts and was sentenced to serve 180 months. Birchfield was not charged with sexual abuse of V.H.

3

she started having sex with Roller in August 2018, despite claiming that Ogden took her virginity in April of 2018. The defense also argued that when V.H. first met with detectives she was very explicit with the details of her experiences, and yet, when she told them about sex with Ogden there were no details whatsoever.

Defense counsel claimed that Ogden should be allowed to introduce evidence of V.H.'s sexual activity under Idaho Rule of Evidence 412(b)(4) because at the time V.H. made the allegations against Ogden, she was sexually active with Michael Roller, and "[s]he then makes allegations against [Ogden] of events that happened way back in the past." Ogden argued that the exception in Rule 412(b)(4) extends beyond the events charged to the time an allegation is made.

The district court was not persuaded that this type of evidence fell under one of the exceptions in Idaho Rule of Evidence 412, stating "[t]hat's not what the rule addresses. The rule addresses sexual behavior. And the purpose of the rule is to insulate victims from having that inquired upon unless it meets the specific exceptions under the rule, right?" The court explained that whether the victim was engaging in sexual behavior with this third party at the time she reported Ogden's conduct to police—months after the alleged contact with Ogden—was irrelevant because "those aren't the events that gave rise to the events of the crime with which Mr. Ogden is charged." The court also recognized "I don't understand what motive she would have at this point to try and protect [Roller] since he is already in prison having either been found guilty of or admitted to the conduct with which he was charged with respect to her."

Defense counsel explained they intended to introduce the evidence to show that V.H. has a propensity to lie. For example, text messages from August 8th show that V.H. told her mother she was with Ogden, but her "kiss list"[4] showed she was having sex with Ty Birchfield on that date. Defense counsel argued this was relevant because Ogden had already sold the Winnebago, where the explicit photograph was taken, to Birchfield; thus, the photograph underpinning the sexual exploitation charge could have been taken by Birchfield. Defense counsel argued there were numerous things like this in the timeline that showed V.H.'s story did not match up. Ultimately, defense counsel explained they were not trying to malign V.H.'s character, but argued it was

---

[4] V.H. had created a "kiss list" that documented her sexual activity. The list was created in March of 2018 and was last modified on August 17, 2018. The exhibit admitted at trial was redacted to omit the names of people listed other than Ogden. Concerning her contact with Ogden, V.H. detailed: "Darin Ogden 10th grade 3/27/2018[.] i was 15 he was 44[.] 4/3/2018 we had sex (i lost my virginity) aand [sic] 4/21/18, 4/25/18, 5/7/18, 5/10/18, 5/22/18, 6/3/18[.] i stopped writing down the dates but its definitely been over10 times[.]"

4

relevant and important to recognize that up until the point V.H. started hanging out with Birchfield and Roller, she was not searching the internet for information about sex, she did not seem to have much sexual knowledge, and she was not acting like someone who had become sexually active.

The district court rejected the defense's argument:

But it's just, she was bad because he was bad. And how far do we want to go with that? How attenuated does your argument become if you keep adding people, gangs. You're not going to get to talk about gangs. You're not going to get to talk about Ty Burchfield [sic], his federal charges, unless there's some relevant reason to do that that I haven't been told about yet.

For now, I'm going to deny the motion in limine because I haven't heard a substantial basis within 412 to find an exception.

Defense counsel asked for the opportunity to re-argue the issue five days before trial. The district court agreed, as long as new evidence was presented. Before trial, Ogden filed a second Rule 412(b) motion in limine, seeking to cross-examine V.H. concerning her relationship and sexual behavior with Birchfield at the Winnebago featured in the State's photograph connected to the sexual exploitation charge Ogden wanted to question V.H. about the presence of Ty Birchfield on her kiss list in support of Ogden's theory that Birchfield took the photograph after he purchased the Winnebago, making Birchfield the actual perpetrator of the alleged offense. Ogden alleged he sold the Winnebago to Birchfield on July 17, 2018. The State's discovery showed the photograph was taken July 30, 2018. Thus, the inference from the proffered evidence is that Ogden could not have taken the offending picture on that date.

Notably, the Idaho Title Application with Ownership Transfer in the record lists the date the vehicle was sold as August 14, 2018. This discrepancy is critical in undermining Ogden's claim that he had transferred the Winnebago to Birchfield by July 30. That said, the defense's phone expert's report showed the photo was placed on Ogden's phone through a third-party application, which would support Ogden's argument that someone else, such as Birchfield, actually took the photo. Further, Ogden's mother testified that she was with Ogden when they delivered physical possession of the Winnebago on July 17, 2018.

At the beginning of trial, the district court took up and denied Ogden's second 412(b) motion. The court concluded there was no evidence to support that Birchfield was in the Winnebago with V.H. on the date the photo was taken. The court determined the same obstacles existed as with the prior Rule 412(b) motion.

5

Following voir dire on the first day of trial, Ogden asked to introduce evidence of a scar on his penis dating back to 2016. Ogden's lead trial attorney informed the court that Ogden had just informed her about the scar that morning, and that evidence of the scar would be relevant because the State's photograph related to the sexual exploitation charge showed the victim and an unscarred penis. The State objected to the surprise evidence, arguing that any testimony or evidence concerning the appearance of Ogden's penis would be completely unreliable as it could have changed since 2018. The State asked the court to find that such evidence was unreliable, inadmissible, extremely prejudicial, and not properly disclosed. When asked by the court how the defense expected to introduce evidence of the scar, defense counsel offered testimony from Ogden's mother, who would testify that Ogden had a chain saw accident involving his penis in 2016.

On the second day of trial, the district court allowed Ogden to make an offer of proof of the existence of the scar through testimony of his mother. Ogden's mother explained that in November of 2018, Ogden got stuck in the snow while hiking and became hypothermic. When Ogden's father brought him inside, Ogden's mother helped remove Ogden's wet clothes and placed him in the bathtub. When Ms. Ogden lifted Ogden's legs to place them in the bathtub, she saw her son's penis and noticed the disfigurement.

Because the basis of Ogden's mother's testimony was an interaction where she viewed Ogden's penis several months after the events charged by the State, the district court excluded the testimony:

> [T]here's no evidence that Mr. Ogden suffered anything prior to that—there was no observation of abnormality prior to the charged conduct.
>
> This witness's testimony is talking about something that happened several months afterwards.
>
> So at this point I would find that that evidence isn't probative of even impeachment and that its introduction would run the risk of substantially outweighing any probative value.

Following trial, the jury found Ogden guilty of sexual battery of a minor and sexual exploitation of a child. At sentencing, Ogden moved the district court to strike aspects of the presentence investigation report (PSI) related to the charges he was acquitted of, arguing the information was unreliable or inaccurate. The district court denied Ogden's request, explaining it

did not find these statements unreliable because "on the verdict that was returned, [the jury] clearly believed that there had been sexual contact between Mr. Ogden and the victim."

The district court entered a judgment of conviction and order of commitment. The court sentenced Ogden to 30 years on each count, with fifteen years fixed. The sentences were to run concurrent to one another but "consecutive to any sentence he is currently serving." Ogden filed a timely notice of appeal.

## II. ISSUES ON APPEAL

1. Did the district court abuse its discretion in denying Ogden's motions in limine seeking to introduce evidence of V.H.'s sexual history with two different third parties at the time the sex crime charges against Ogden were filed?

2. Did the district court abuse its discretion in excluding evidence regarding gangs and Birchfield's involvement with drug gangs?

3. Did the district court abuse its discretion in excluding evidence of Ogden's scarred penis?

4. Did the district court abuse its discretion by not redacting statements regarding conduct for which Ogden had been acquitted in the PSI?

5. Did the district court abuse its discretion during sentencing?

## III. STANDARD OF REVIEW

"When reviewing the trial court's evidentiary rulings, this Court applies an abuse of discretion standard." *State v. Chambers*, 166 Idaho 837, 840, 465 P.3d 1076, 1079 (2020) (quoting *State v. Jeske*, 164 Idaho 862, 867, 436 P.3d 683, 688 (2019)). "The question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *State v. Hall*, 163 Idaho 744, 781, 419 P.3d 1042, 1079 (2018) (quoting *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006)). "Sentencing decisions are also reviewed using an abuse of discretion standard." *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020) (quoting *State v. Matthews*, 164 Idaho 605, 607, 434 P.3d 209, 211 (2019)).

When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## IV. ANALYSIS

7

**A.      Although the district court did not abuse its discretion by denying Ogden's first Rule 412(b) motion seeking to introduce evidence of V.H.'s sexual history with Michael Roller, it abused its discretion by denying Ogden's second Rule 412(b) motion seeking to introduce evidence of V.H.'s sexual history with Ty Birchfield.**

Ogden filed two motions in limine seeking to introduce evidence of V.H.'s sexual involvement with two different men at the time the sex crime charges were filed against Ogden. In general, Idaho Rule of Evidence 412(b) prohibits the introduction of "evidence of an alleged victim's past specific instances of sexual behavior," when the defendant is charged with a "sex crime." Ogden argues two exceptions to this general rule are present in this case. One exception applies when "an alleged victim's sexual behavior with someone other than the defendant . . . occurred at the time of the event giving rise to the sex crime charged." I.R.E. 412(b)(4). Another exception exists when "exclusion would violate the defendant's constitutional rights." I.R.E. 412(b)(5).

*1.  First Rule 412(b) motion – Michael Roller*

Ogden's first motion in limine sought to introduce evidence relating to Michael Roller, alleging V.H.'s relationship with Roller provided a motive for V.H. to lie about sexual contact with Ogden. Ogden cited Idaho Rules of Evidence 412(b)(4) and (b)(5) and the Sixth and Fourteenth Amendments to the United States Constitution, and Idaho Rules of Evidence 401, 404(A)(2), 803(2), and 806.

At the hearing on the first Rule 412(b) motion in limine, the following exchange took place:

THE COURT: I am confused about which element of 412(b) you believe is satisfied. The only one that I can imagine is (b)(4), and not hearing the reference to specific evidence of sexual behavior with someone other than the defendant that occurred at the time of the event that gives rise to the crimes charged, what evidence – what specific evidence is there of sexual conduct at the time of the event.

So those would be the times that are charged in the information, not the time at which the offenses came to light.

. . . .

DEFENSE COUNSEL: I believe the plain language of the rule indicates that at the time [V.H.] made her allegations against [Ogden], her sexual conduct at the time was with Michael Roller. She then makes allegations against [Ogden] of events that happened way back in the past . . .

THE COURT: By that logic, someone could have been abused at the age of 13 or 14, not reported it until she was 21 or 22, was become [sic] engaged in another sexual relationship. And from your reasoning, evidence of that sexual relationship would be relevant because she didn't report it until she was 21 or 22?

8

DEFENSE COUNSEL: Well, I believe the specific facts of this case would be different because of the violence and the drugs involved, and [V.H.]'s actions up to that point, the relationship between [V.H.] - -

THE COURT: That's not what the rule addresses. The rule addresses sexual behavior. And the purpose of the rule is to insulate victims from having that inquired upon unless it meets the specific exceptions under the rule, right?

. . . .

DEFENSE COUNSEL: An alleged victim's sexual behavior with someone other than the defendant that occurred at the time of the event giving rise to the sex crime charged.

THE COURT: The event giving rise to the sex crime charged isn't the report of the sex crime, because that can be remote in time from the actual event that constitutes the sex crime. It might not bear any relationship at all to the event that constitutes the sex crime.

The district court explained that whether the victim was engaging in sexual behavior with a third party at the time she reported Ogden's conduct to police—months after the alleged contact with Ogden—was irrelevant because "those aren't the events that gave rise to the events of the crime with which Mr. Ogden is charged." The court also recognized "I don't understand what motive she would have at this point to try and protect [Roller] since he is already in prison having either been found guilty of or admitted to the conduct with which he was charged with respect to her."

The district court ultimately agreed with the State's narrow interpretation of the rule, "that it's got to be almost a case of, I think he did it, but there might have been somebody else." The court rejected the narrative the defense had presented after finding it painted the victim as sexually promiscuous and indiscriminate, which was simply attacking her character and was unduly prejudicial. The court held that shielding a victim from such testimony was the exact reason that Rule 412 was enacted. Without providing a specific reason that met one of Rule 412(b)'s exceptions, the court denied Ogden's motion.

On appeal, Ogden argues that the district court's narrow interpretation of the Rule 412 (b)(4) exception is erroneous. Rule 412(b)(4) provides:

(b) Notwithstanding any other provision of law, in a criminal case in which a defendant is accused of a sex crime, evidence of an alleged victim's past specific instances of sexual behavior is also not admissible, but the following such evidence may be admitted:

. . . .

(4) an alleged victim's sexual behavior with someone other than the defendant that occurred at the time of the event giving rise to the sex crime charged;

9

I.R.E. 412(b)(4).

Ogden suggests the Rule allows evidence of the alleged victim's sexual behavior with others during the "charging period" of the sex crimes charged. Ogden points out the Rule does not say "simultaneously" with the event, rather, the phrase "at the time of the event giving rise" shows the Rule allows the admission of evidence during a broader range of time than the district court's interpretation. The State counters that the distinction Ogden attempts to create between the language of the rule and the word "simultaneous," flies in the face of the plain, usual, and ordinary meanings of those words. Simultaneous has been defined as: "existing or occurring at the same time." *Simultaneous*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971). Citing Rule 412(b)(4)'s plain language that dictates the exception only applies to behavior "that occurred at the time of the event," the State argues the district court did not err in limiting the exception to events giving rise to the sex crimes charged.

Interpretation of court rules begins with the plain-meaning rule—requiring application of "the literal words and that those words must be given their plain, usual, and ordinary meaning." *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017) (citing *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 893, 265 P.3d 502, 506 (2011)). This Court explained in *Montgomery* the one difference between statutory interpretation and the interpretation of court rules: that the "ordinary meaning of the rule's language . . . may be tempered by the rule's purpose." *Id*. Only if the plain meaning of the language is ambiguous should statutory interpretation principles be applied. *State v. McKean*, 159 Idaho 75, 79–80, 356 P.3d 368, 372–73 (2015). Ambiguity in the language exists where:

> The meaning is so doubtful or obscure that reasonable minds might be uncertain or disagree as to its meaning. However, ambiguity is not established merely because different possible interpretations are presented to a court. If this were the case then all statutes that are the subject of litigation could be considered ambiguous. A statute is not ambiguous merely because an astute mind can devise more than one interpretation of it.

*Id*. at 80, 356 P.3d at 373 (internal alterations omitted).

The exception in Rule 412(b)(4) is unambiguous. Idaho Rule of Evidence 412 generally acts to prohibit "reputation or opinion evidence of the alleged victim's past sexual behavior" where the "defendant is accused of a sex crime." I.R.E. 412(a). The exception in question allows admission of evidence of "an alleged victim's sexual behavior with someone other than the defendant that occurred *at the time of the event* giving rise to the sex crime charged[.]" I.R.E.

10

412(b)(4) (emphasis added). The district court's interpretation of the exception—constraining it to the time surrounding the events giving rise to the sex crimes charged—is consistent with the plain meaning of the words used in the Rule limiting the exception for behavior "that occurred at the time of the event." I.R.E. 412(b)(4). V.H. accused Ogden of sexual misconduct beginning at the end of March 2018. Her sexual conduct with Roller did not begin until July or August 2018. Although V.H. did not accuse Ogden until August, that does not cause her purported conduct with Roller to relate back to the date of the offenses Ogden allegedly committed. We hold the district court appropriately rejected Ogden's expansive interpretation of the Rule 412(b)(4) exception.

This Court has identified that Rule 412 serves two purposes: "[f]irst, the rule aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of the victim's prior sexual behavior. Second, these laws encourage victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." *State v. Chambers*, 166 Idaho at 841, 465 P.3d at 1080 (citing I.R.E. 412 advisory committee's note to 1994 amendment). "The purpose of providing the exceptions contained in Rule 412 is to protect the defendant's right to a fair trial, while protecting the victim from public embarrassment from the disclosure of past sexual behavior." *Id*. at 843, 465 P.3d at 1082. As a result, a defendant's right to present his theory of a case is not unfettered in the Rule 412 context:

> The Rules of Evidence embody the balancing test which safeguards a defendant's constitutional right to present a defense along with protection of the state's interest in the integrity of the criminal trial process. For instance, I.R.E. 412 employs a two-part test to evaluate whether a defendant's Sixth Amendment right to a defense is violated in light of I.R.E. 412.6. First, the trial court must consider whether the evidence proffered is relevant. If it is not relevant, the defendant has no constitutional right to present it. If the evidence is relevant, the trial court must ask whether other legitimate interests outweigh the defendant's interest in presenting the evidence. Due to the highly sensitive nature of sex crimes in general, this standard has been found to effectively balance the state's interest in protecting victims of sex crimes from disclosing their past sexual behavior except in limited circumstances and the defendant's interest in presenting a defense for the crimes of which s/he is accused.

*State v. Meister*, 148 Idaho 236, 240–41, 220 P.3d 1055, 1059–60 (2009) (internal citations and quotations omitted). "Admission of evidence of an alleged victim's past sexual behavior is constitutionally required only in extraordinary circumstances." *State v. Ozuna*, 155 Idaho 697, 702,

316 P.3d 109, 114 (Ct. App. 2013) (quoting *State v. Peite*, 122 Idaho 809, 815, 839 P.2d 1223, 1229 (Ct. App. 1992)).

Ultimately, the district court did not abuse its discretion in denying Ogden's motion in limine under Rule 412(b)(4). Applying the plain language of Rule 412(b)(4), the exception only applies at the time of the event charged. The district court correctly determined that Roller's abuse of V.H., which occurred roughly four months after Ogden's alleged abuse of V.H. occurred, did not satisfy the exception's requirement that the conduct occurred "at the time of the event charged."

Separately, Ogden argues the district court abused its discretion by not considering the applicability of Rule 412(b)(5). Rule 412(b)(5) provides an exception to the general rule that a victim's past specific instances of sexual behavior is not admissible if it is "evidence whose exclusion would violate the defendant's constitutional rights." I.R.E. 412(b)(5). However, a defendant does not have a constitutional right to submit irrelevant evidence. *Meister*, 148 Idaho at 240–41, 220 P.3d at 1059–60. "The question of whether evidence is relevant is reviewed de novo." *State v. Hall*, 163 Idaho 744, 781, 419 P.3d 1042, 1079 (2018) (quoting *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006)). Given that Roller's abuse of V.H. occurred several months after V.H. alleged she had been abused by Ogden, we hold that it is irrelevant. This is specifically the type of evidence that Rule 412 is designed to keep out.

That said, Ogden argues the line of questioning was necessary to show V.H.'s bias, and evidence which bears on a witness's credibility at trial is always relevant. *Davis v. Alaska*, 415 U.S. 308, 316 (1974); *see also State v. Arledge*, 119 Idaho 584, 586, 808 P.2d 1329, 1331 (Ct. App. 1991) ("whenever evidence is introduced for purposes of impeachment, it necessarily involves a witness' credibility, and credibility is always relevant"). The district court did not find any indication of bias; rather, it found that Ogden sought only to "attack[] [V.H.'s] character" and that Rule 412 existed to prevent this type of attack "where the evidence of character has to do with sexual reputation." We agree. We also recognize that the district court permitted Ogden to cross-examine V.H. about false or inconsistent statements she made. However, consistent with Rule 412, the court rejected Ogden's counsel's request to cross-examine V.H. about her sexual reputation:

> I'm having difficulty following because it feels fairly convoluted to me. It feels like a shotgun approach that's focused, look how bad this kid is. So given how bad this kid is, you can't convict my client. You don't get to talk about how bad this kid is if the badness all relates to her sexual reputation.

> If there are specific instances in your timeline that you could point to a falsehood on her part and if that is otherwise admissible by the rules of evidence, then we can talk about it. But I've not heard any specific instances of that.

Notably, Ogden was able to point to a specific example in which text messages from August 8th showed that V.H. told her mother she was with Ogden, but her "kiss list" stated she was having sex with Ty Birchfield. However, that did not pertain to the introduction of evidence concerning Michael Roller, which was the primary focus of Ogden's first Rule 412(b) motion. The district court did not abuse its discretion in excluding Ogden's efforts to cross examine V.H. about her sexual activity with Roller because it was irrelevant and precluded under Rule 412.

2. *Second Rule 412(b) motion in limine – Ty Birchfield*

Ogden's second motion in limine pertained to Ty Birchfield. The sexual exploitation charge alleged Ogden had taken a sexually explicit photograph of V.H. in his Winnebago on July 30, 2018. Ogden alleged that Birchfield had taken the explicit photograph, not Ogden. In filing his second motion in limine, Ogden cited Idaho Rules of Evidence 412(b)(4) and (b)(5) and the Sixth and Fourteenth Amendments to the United States Constitution, and Idaho Rules of Evidence 401, 404(A)(2), 803(2), and 806. Ogden alleged he sold the Winnebago to Birchfield on July 17, 2018. The State's discovery showed the photograph was taken July 30, 2018. However, the Idaho Title Application with Ownership Transfer in the record lists the date sold as August 14, 2018. This discrepancy undermines Ogden's claim that he had transferred the Winnebago to Birchfield by July 30th. Even so, the defense's phone expert report showed the photo was placed on Ogden's phone through a third-party application. Further, Ogden's mother testified that she was with Ogden when they delivered physical possession of the Winnebago on July 17, 2018.

At the beginning of trial, the district court first questioned the relevance of Ogden's motion. The court asked, "what specific evidence that [sic] you have that Mr. Burchfield [sic] was in the trailer on this particular day [July 30, 2018], in the Winnebago on this particular day." Defense counsel responded he did not have specific evidence of Birchfield's presence in the Winnebago on that date, but he did have evidence that Birchfield owned and had possession of the Winnebago prior to July 30. Defense counsel explained Birchfield owned and possessed the vehicle where the photo had been taken, and he appears on the victim's kiss list shortly after the photo was taken. The district court denied Ogden's motion:

> [W]hat I've heard so far is there is no evidence to support that Mr. Birchfield was in the Winnebago with the victim on July 30th.

13

So I'm not going to let you get into that. I'm not going to let you cross-examine the victim on that without any evidence.

It's the same – the same obstacles to an application of 412 that exists with respect to what I did with Mr. Welrun (phonetic) that I've already decided.

As set forth above, Idaho Rule of Evidence 412 generally prohibits the introduction of "evidence of an alleged victim's past specific instances of sexual behavior," when the defendant is charged with a "sex crime." I.R.E. 412. Ogden argues that even under the district court's narrow interpretation, he should have been permitted to ask V.H. where she was and whether she was with Birchfield at the time the photograph was taken. If V.H. answered she was with Birchfield, Ogden argues he should have been able to inquire whether V.H. was engaged in sexual behavior including the taking of photos with Birchfield at the time. We agree.

Again, "[t]he question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *Hall*, 163 Idaho at 781, 419 P.3d at 1079 (quoting *Shutz*, 143 Idaho at 202, 141 P.3d at 1071). Here, unlike the significant gap in the timeline between Ogden's charged conduct and the abuse by Roller, the evidence relating to Birchfield related to the exact date when the photograph was ostensibly taken; thus, it was relevant. This evidence was in direct contravention of the State's theory of the case and the answer could have pointed directly away from Ogden. This inference is particularly true given that Ogden allegedly no longer owned the Winnebago at the time the photo was taken. Even more, the Winnebago was allegedly purchased by a man whose name appeared on V.H.'s "kiss list" nearly a week after the photo was taken.

The district court erroneously based its denial of Ogden's second motion on its earlier decision to exclude evidence of V.H.'s involvement with Michael Roller. Although both motions cited exceptions to Rule 412(b), they concerned different time periods and involved different parties, charges, and facts. A lower court abuses its discretion when it does not provide sufficient reasoning and analysis for this Court to review. *Nelsen v. Nelsen*, 170 Idaho 102, 508 P.3d 301, 322 (2022); *See, e.g., Schultz v. Schultz*, 145 Idaho 859, 863, 187 P.3d 1234, 1238 (2008) ("Such a lack of elaboration is considered an abuse of discretion because this Court cannot review the order to determine whether the lower court acted consistently with applicable legal standards."). The district court's failure to elaborate on why Ogden's second 412(b) motion was denied precludes any meaningful review by this Court.

The State contends any error in the district court's Rule 412 analysis was harmless error. An "error is harmless if the Court finds that the result would be the same without the error." *State v. Garcia*, 166 Idaho 661, 675, 462 P.3d 1125, 1139 (2020). The State argues that the evidence of V.H.'s separate sexual relationships after her contact with Ogden had no bearing upon the crimes as charged. We disagree and are not confident the result would be the same without the error. If Ogden had been able to introduce evidence that Birchfield had sexual relations with V.H., along with the fact that Birchfield purchased the Winnebago from Ogden a week before the explicit photograph was taken, the jury could have reasonably concluded that Birchfield, not Ogden, took the photograph. As a result, we cannot conclude that the error is harmless. We vacate Ogden's conviction for sexual exploitation of a child. However, because we have held that the district court properly denied Ogden's first motion in limine, which sought to introduce evidence concerning V.H.'s sexual activity to show her incentive to lie about sexual *contact* with Ogden unrelated to the explicit photograph, we affirm the sexual battery conviction.

B.    **The district court did not abuse its discretion by excluding evidence concerning drug gangs.**

Ogden filed a motion seeking to introduce expert testimony explaining that drug gangs exist and operate in Boise, Idaho, as well as general information on how drug gangs operate, including gang tactics. The State filed a motion to exclude Ogden's expert witness. Despite a request made by Ogden, the district court never set a hearing on the motion. However, at the Rule 412(b) hearing, Ogden argued:

> But I think that critical chronology between when [Ogden] left town July 30th through the month of August up until September 4th when he assists her mother in calling the police, that's when [V.H.] essentially joined the drug gang, was shot up with methamphetamine, willingly went with Michael Roller, a known enemy of [Ogden]. And Michael Roller, during all subsequent interviews of [V.H.], was out of custody; he wasn't arrested until May of 2019. [Ogden] was arrested approximately September 18th.

The defense theory was that Ogden was set up in this case, explaining:

> We're not trying to malign her character here. That's not the goal here at all. But we think that it's certainly relevant and important to recognize that up until she starts hanging out with these other men, she wasn't searching about sex, she didn't seem to have much knowledge, she's certainly acting like someone that is pretty innocent.
>
>     And it wasn't until she starts getting shot up with meth and starts having sex with these other men that it starts to happen. And she joins this gang that's related

15

to Ty Burchfield [sic] who is literally under federal indictment for running a drug operation.

At the end of the hearing, the judge made an oral ruling excluding the evidence: "You're not going to get to talk about gangs. You're not going to get to talk about Ty Burchfield [sic], his federal charges, unless there's some relevant reason to do that that I haven't been told about yet." No evidence of gang involvement by V.H., Michael Roller, or Ty Birchfield was introduced at trial.

Ogden argues that evidence of drug gangs and gang involvement was relevant to establish the defense theory of the case. Specifically, Ogden submits "[t]he evidence was material because it went directly to the issue of whether Mr. Ogden committed the acts he was charged with. Thus, it was relevant evidence." The State responds that the district court correctly excluded the proposed testimony regarding drug gangs because it had no tendency to make a fact of consequence more or less probable. *See* I.R.E. 401.

Relevant evidence is admissible unless these rules, or other rules applicable in the courts of this state, provide otherwise. I.R.E. 402. Evidence is relevant if it is probative, having "any tendency to make a fact more or less probable" and material, being "of consequence in determining the action." I.R.E. 401. "Whether a fact is 'of consequence' or material is determined by its relationship to the legal theories presented by the parties." *State v. Ochoa*, 169 Idaho 903, 505 P.3d 689, 699 (2022) (quoting *Garcia*, 166 Idaho at 670, 462 P.3d at 1134). Further, whether an issue is relevant requires understanding those theories "concerning the crime charged," the elements of that crime, and the ultimate issue that the jury is asked to determine. *Garcia,* 166 Idaho at 671 n.3, 462 P.3d at 1135 n.3. "The question of whether evidence is relevant is reviewed de novo, while the decision to admit relevant evidence is reviewed for an abuse of discretion." *Hall*, 163 Idaho at 781, 419 P.3d at 1079 (quoting *Shutz*, 143 Idaho at 202, 141 P.3d at 1071).

Ogden argues two points make the gang evidence relevant. First, V.H. was involved in criminal activity with Michael Roller, who made a death threat against Ogden while he was with V.H. just prior to the kidnapping report. Second, the gang evidence about Ty Birchfield, who owned the Winnebago on July 30th, was probative because it made the defense theory that V.H. was making a false allegation against Ogden more likely. Ogden argues the evidence was material because it went directly to the issue of whether Ogden committed the acts he was charged with, thus, it was relevant.

16

Ultimately, the jury was asked to consider whether Ogden had committed certain sexual acts upon the victim. The State argues that any testimony regarding drug gangs did not affect the questions presented to the jury, nor any of the elements of the crimes charged. Accordingly, the district court correctly concluded that the testimony was irrelevant. Ogden counters evidence that the complaining witness has a motive to lie about who committed the crimes against her makes her testimony as to the elements less likely to be true.

"The right to present a defense is protected by the Sixth Amendment of the United States Constitution and made applicable to the states through the due process clause of the Fourteenth Amendment." *Meister*, 148 Idaho at 239, 220 P.3d at 1058 (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)). "This right is a fundamental element of due process of law." *Id*. The right to present a defense includes the right to offer testimony of witnesses, compel their attendance, and to present the defendant's version of the facts "to the jury so it may decide where the truth lies." *Id*. However, this right must be balanced against the State's interest in the criminal trial process; "the Sixth Amendment 'does not confer the right to present testimony free from the legitimate demands of the adversarial system.' " *Id*. (citing *State v. Albert*, 138 Idaho 284, 287, 62 P.3d 208, 211 (Ct. App. 2002)). A defendant has no right to present irrelevant evidence; even if evidence is relevant, it may be excluded in certain cases. *Ozuna*, 155 Idaho at 702, 316 P.3d at 114 (citing *State v. Peite*, 122 Idaho 809, 814, 839 P.2d 1223, 1228 (Ct. App. 1992)).

Ultimately, evidence of gangs was irrelevant and was inextricably connected to the Rule 412(b) evidence that we have ruled was properly excluded. The district court viewed these matters as intertwined and ruled accordingly. Thus, even if there were some evidence regarding the nature of V.H.'s alleged involvement in illegal behavior with Roller and Birchfield, the district court did not err in excluding the evidence of how gangs operate as irrelevant to the primary issues presented. Even if Ogden was permitted to introduce evidence of Ty Birchfield and Michael Roller's gang involvement, it is unclear how their gang connections relate to the sexual allegations in the case. We hold the district court properly excluded Ogden's expert testimony on gangs.

C.    **The district court did not abuse its discretion in excluding evidence of Ogden's scarred penis.**

Relating to the sexual exploitation charge, the State alleged that Ogden took an explicit photograph of V.H., which also showed his penis in the photograph. Following voir dire on the first day of trial, Ogden requested to introduce evidence of a scar that had purportedly existed on

17

his penis since 2016. Counsel argued evidence of the scar was relevant because the State's photograph included the victim and an unscarred penis. On the second day of trial, the district court allowed Ogden to make an offer of proof of the existence of the scar through testimony of Ogden's mother. She explained that in November of 2018, Ogden got stuck in the snow while hiking and became hypothermic. When Ogden's father brought him inside, Ogden's mother helped remove Ogden's wet clothes and place him in the bathtub. When Ogden's mother lifted Ogden's legs to place them in the bathtub, she saw her son's penis and noticed the abnormality.

Because the basis of Ogden's mother's testimony was an interaction where she viewed Ogden's penis several months after the events charged by the State, the district court excluded the testimony:

> [T]here's no evidence that Mr. Ogden suffered anything prior to that—there was no observation of abnormality prior to the charged conduct.
>
> This witness's testimony is talking about something that happened several months afterwards.
>
> So at this point I would find that that evidence isn't probative of even impeachment and that its introduction would run the risk of substantially outweighing any probative value.

Although we have already vacated Ogden's conviction for sexual exploitation of a child, we are also required to "pass upon and determine all the questions of law involved in the case presented upon such appeal, and necessary to the final determination of the case." *State v. Joy*, 155 Idaho 1, 12, 304 P.3d 276, 287 (2013) (quoting I.C. § 1-205); *see also State v. Payne*, 146 Idaho 548, 568, 199 P.3d 123, 143 (2008). Therefore, to provide guidance on remand, we will address Ogden's argument that the district court abused its discretion in excluding the evidence as it is likely to be presented again in future proceedings.

Ogden argues the district court abused its discretion in excluding the evidence under Rule 403. Idaho Rule of Evidence Rule 403 allows the court to exclude relevant evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." A court's decision to exclude evidence pursuant to I.R.E. 403 is reviewed for an abuse of discretion. *Garcia*, 166 Idaho at 671, 462 P.3d at 1135.

Ogden argues the evidence that his penis has an "abnormal-looking end" was relevant because it makes it less likely that the normal-looking penis in the State's exhibit was Ogden's.

18

Ogden contends the fact that his mother did not make her observations until four months after the illegal photograph was taken does not deprive the evidence of all probative value because "common experience tells us that nearly all men go their entire lives without their penis developing an abnormality." Ogden contends the possibility that his penis was scarred sometime after July 30th but before November of that year may be remote, but it only affects the weight of the evidence. Ogden contends the evidence is material because if it is not Ogden's penis in the photograph, he did not take the photograph as charged by the State and claimed by V.H.

We hold the district court did not abuse its discretion in rejecting the testimony of Ogden's mother. Ogden's offer of proof did not establish sufficiently that the alleged scar on Ogden's penis existed on the dates of the alleged crime. Further, Ogden's claim that "common experience tells us that nearly all men go their entire lives without their penis developing an abnormality" is disingenuous given that elsewhere in the record, Ogden supposedly got his scar in a 2016 chainsaw accident. Despite a request made by the district court, Ogden was unable to produce any medical records to support his alleged chainsaw incident; thus, the district court properly weighed this evidence in the balance, and it is not for this Court to now reweigh those conclusions. There is simply no way, on the record before us, to discern if the scarring occurred in 2016, at birth, or if there is a scar at all. Ogden failed to submit proof "sufficient to support a finding of the fact" that his penis was scarred on the date in question. I.R.E. 104(b). As a result, Ogden's mother's testimony discussing the appearance of Ogden's penis nearly four months later was irrelevant. We affirm the district court's exclusion of the evidence.

## D. The district court did not abuse its discretion by declining to redline portions of the PSI describing conduct Ogden was acquitted of committing.

Ogden alleges the "Official Version" section of the PSI contains allegations of charges he was acquitted of committing. For example, it reads: "the defendant sexually abused the 15-year-old daughter of Ms. Millett. It is reported this abuse happened on multiple occasions and at different locations while the victim was 15 and 16 years old." On page 2, the PSI then describes the four incidents which were charged in Counts I-IV. But Ogden was acquitted of all the charges which alleged sexual contact with V.H. when she was fifteen. The PSI additionally stated that Ogden would show V.H. pornography even though he was acquitted of disseminating material harmful to children.

At the sentencing hearing, Ogden asked the district court to redline the portions of the PSI relating to the acquitted counts:

> [O]n pages one, two and the top of three under the Official Version, obviously there's a portion of that where we object to the recitation as inaccurate or unreliable. I note that there was a recent case. I was able to find that. It was unreported unfortunately, so I don't have any reported case law on the issue, but it's *State of Idaho v. Lena Page*, Docket No. 46352.
>
> In that case it seems to suggest that if the Court finds any of that information in the official version to be unreliable based on the Court's own view of the evidence, that that information should be redlined.
>
> And so there are a number of aspects to the official version that relate to charges that Mr. Ogden was acquitted of. It would be our contention that, you know, that information is unreliable at this point. The jury has heard it and made a decision on it. I understand that reliability might be a different standard.

The district court denied Ogden's request:

> THE COURT: My view of the verdict is that it reflects the jury's inability to find that the defendant -- or that the victim was of the requisite age at the time that the offenses were committed. I think that he was acquitted on the lewd conduct charges not because they didn't believe that the conduct occurred, but because they couldn't find beyond a reasonable doubt that she was under 16 at the time. That is -- that's my view.
>
> . . . . It's just that my sense based on the verdict that was returned, they clearly believed that there had been sexual contact between Mr. Ogden and the victim. I think that they were just hung up on her age at the time that that sexual conduct occurred. So I don't find that that information is unreliable.

A district court's denial of a motion to strike or delete portions of a PSI is reviewed on appeal for an abuse of discretion. *State v. Molen*, 148 Idaho 950, 961, 231 P.3d 1047, 1058 (Ct. App. 2010). I.C.R. 32(e)(1). Under that standard, this Court examines "whether the trial judge: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Bodenbach*, 165 Idaho at 591, 448 P.3d at 1019.

Idaho Criminal Rule 32 governs presentence investigation reports, and requires the report contain, among other things, "the description of the situation surrounding the criminal activity with which the defendant has been charged, including the defendant's version of the criminal act and the defendant's explanation for the act, the arresting officer's version or report of the offense, where available, and the victim's version, where relevant to the sentencing decision." I.C.R. 32(b).

20

The information Ogden requested the district court strike pertained to official police reports and the victim's version of events reported to police, which Rule 32(b)(1) requires to be included. *See* I.C.R. 32(b) (requiring the PSI to include the arresting officer's version or report of offense and the victim's version). Further, this Court has recognized that a trial court may specifically consider a "defendant's prior conduct for which he was tried and acquitted." *State v. Flowers*, 150 Idaho 568, 574, 249 P.3d 367, 373 (2011) (citing *United States v. Watts*, 519 U.S. 148, 156 (1997)). The law plainly supports including a defendant's past charged conduct, even if he has been acquitted of the charges:

> Information that a sentencing court can rely upon includes a defendant's past criminal behavior that resulted in a conviction, *Witte v. United States*, 515 U.S. 389, 397 (1995); the defendant's prior uncharged criminal conduct, *id*.; and the defendant's prior conduct for which he was tried and acquitted. *United States v. Watts*, 519 U.S. 148, 156 (1997)."

*Id*.

The dissent relies on the Idaho Court of Appeals holding in *State v. Molen*, as support for the conclusion that the district court abused its discretion on this issue. *Molen* is distinguishable. The reliability question in *Molen* was whether the defendant was the right person to whom part of the criminal history in the PSI had been ascribed. 148 Idaho at 961–62, 231 P.3d at 1058–59. Here, the question is whether conduct for which Ogden (the correct defendant) was acquitted should be redlined from the PSI. Given the requirement of Rule 32 that the PSI include police reports, an "official version," and even the victim's version, the district court did not abuse its discretion in refusing to redline such materials.

**E.      The district court did not abuse its discretion during sentencing.**

Ogden argues his sentences were imposed in violation of due process. The constitutional guarantee of due process is fully applicable at sentencing. *Gardner v. Florida*, 430 U.S. 349, 358 (1977). "[A] trial court violates a defendant's due process rights by relying upon materially false or unreliable information at sentencing." *United States v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995) (citing *United States v. Kerr*, 876 F.2d 1440, 1445 (9th Cir. 1989)). "However, where the false information does not form the basis for the sentence, there is no need to vacate the sentence on appeal." *State v. Mitchell*, 146 Idaho 378, 385, 195 P.3d 737, 744 (Ct. App. 2008) (citing *United States v. Ruster*, 712 F.2d 409, 412 (9th Cir. 1983)).

Although Ogden initially suggests his "sentences" were imposed in violation of due process, he appears to limit his argument to the sexual battery conviction: "[t]his Court should

vacate the 30-year sentence and remand for resentencing because it was based in part on the erroneous conclusion that the jury believed V.H.'s testimony about having sexual contact with Mr. Ogden, notwithstanding the evidence and the jury's verdict." However, the verdict shows the jury believed Ogden had sexual contact with V.H., as it found him guilty of sexual battery. The fact that Ogden was acquitted of the four counts of lewd conduct does not mean the jury did not believe Ogden had sexual contact with V.H. To the extent the district court even considered Ogden's acquitted conduct, it is permitted to do so. *See Flowers*, 150 Idaho at 574, 249 P.3d at 373 (citing *Watts*, 519 U.S. at 156) (trial court may consider a "defendant's prior conduct for which he was tried and acquitted."). Thus, the district court did not abuse its discretion in considering the PSI and the evidence presented during the trial, even if the jury acquitted Ogden of the lewd conduct counts. We affirm the sentence imposed related to the sexual battery conviction. Because of the remand granted above, we vacate the sentence related to the sexual exploitation conviction.

## VI. CONCLUSION

Ogden's judgment of conviction for sexual battery is affirmed. Ogden's judgment of conviction for sexual exploitation of a child is vacated and remanded for a new trial.

Justices BRODY, MOELLER, and ZAHN CONCUR.

STEGNER, J., concurring in part and dissenting in part.

I concur with Chief Justice Bevan's opinion in all respects, with the sole exception of his conclusion to affirm the district court's decision to decline to redline portions of Ogden's presentence investigation report (PSI). On that point, I respectfully dissent.

The majority finds that the district court did not abuse its discretion in declining to redline the PSI because it "acted consistently with the legal standards applicable to the specific choices available to it." *State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)). I disagree with the majority's analysis of this issue.

One of the intended purposes of the presentence report is not only to inform the sentencing court, but also to provide reliable information about the defendant to the Idaho Department of Correction (IDOC). *State v. Molen*, 148 Idaho 950, 961–62, 231 P.3d 1047, 1058–59 (Ct. App. 2010) (citing *State v. Rodriguez*, 132 Idaho 261, 262 n.1, 971 P.2d 327, 328 n.1 (Ct. App. 1998)). The PSI regularly impacts the IDOC's supervision of the defendant during his incarceration and supervision

22

following incarceration. In other words, the IDOC relies on the PSI as it monitors the defendant during its supervision of the defendant and throughout his interactions with the IDOC. The PSI can therefore dramatically influence the IDOC's decisions about the defendant regarding parole eligibility, and the terms and level of supervision if parole is granted. *Id.* For this reason, correcting inaccuracies within the report is critical in order to provide the IDOC with an accurate depiction of the defendant. If the report contains inaccurate information, then the defendant would be prejudiced when IDOC uses the report to make decisions regarding him.

For example, in *Molen*, the Idaho Court of Appeals overturned a district court's denial of a motion to strike a portion of a PSI that included a twenty-year-old sexual abuse report about a person of the same name as the defendant "who had a different birth date, but the same birth month and year as Molen." *Molen*, 148 Idaho at 961, 231 P.3d at 1058. The court held that without a more definite "basis to credit the [sexual abuse report] as reliable or as referable to Molen, . . . its inclusion in the PSI was not warranted." *Id.* To hold otherwise would bring "future prejudice to Molen." *Id.* at 962, 231 P.3d at 1059.

Here, Ogden's report is inaccurate. On the first page of the PSI under the section titled "**OFFICIAL VERSION**," the report reads: "[T]he defendant sexually abused the 15-year-old daughter of [the victim's mother]. It is reported this abuse happened on multiple occasions and at different locations while the victim was 15 and 16 years old." However, a jury acquitted Ogden of the charges alleging sexual contact with the victim when she was fifteen. To leave this incorrect information in the PSI after a jury heard the evidence and decided the issue would prejudice Ogden. Therefore, those portions of the report that conflict with the jury's findings should be deleted.

I do not disagree with the majority's reliance on *State v. Flowers* to inform the sentencing court of the information it may rely upon when making its decision. 150 Idaho 568, 249 P.3d 367 (2011). In *Flowers*, the defendant challenged the process of his plea agreement because the PSI and prosecutor "referred to facts relating to the dismissed charges." *Id.* at 573, 249 P.3d at 372. This Court held that the plea agreement did not limit the information that the State could present to the sentencing court. *Id.* at 574, 249 P.3d at 373. As a result, the State could "present any relevant information that could assist the court." *Id.*

However, my issue with the PSI containing inaccurate information is not that I do not trust the sentencing court to sift through the relevant information to impose an appropriate sentence. Instead, my concern is that the inaccurate PSI follows the defendant from the sentencing court and

23

on to the IDOC. Unlike the sentencing court, which had the benefit of hearing all the evidence and understanding why certain charges had been dismissed, IDOC has only the PSI. For that reason, I believe the district court has an obligation to present an *accurate* recitation of the defendant's history, such that an agency that was not involved in the trial or plea agreement process can draw fair and accurate conclusions about the defendant's history. Because the PSI now conveys an inaccurate impression, there is a distinct likelihood of future prejudice to the defendant. The goal should be to strive for scrupulous accuracy. Today's decision does not promote that goal. Therefore, I would reverse the district court's decision.

Accordingly, I respectfully dissent solely from that portion of the majority's decision which affirms the district court's refusal to redact the incorrect information within Ogden's PSI.